UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JESSE BLACK,<br><br>    Plaintiff,<br><br>v.<br><br>T-MOBILE USA, INC,<br><br>    Defendant. | Case No. 17-cv-04151-HSG<br><br>**ORDER DENYING MOTION TO REMAND**<br><br>Re: Dkt. No. 15 |

Pending before the Court is Plaintiff's motion to remand. Dkt. No. 15. For the reasons detailed below, the Court **DENIES** the motion.

## I. BACKGROUND

On January 31, 2017, Plaintiff filed this putative labor and employment class action in Alameda Superior Court. *See* Dkt. No. 1, Ex. A ("Compl."). Plaintiff alleges that he worked for Defendant as a Senior Field Technician and was denied adequate overtime compensation as well as meal and rest periods from approximately 2008 through 2015. *See id.* ¶ 4.

According to Plaintiff, Defendant had "a company-wide" policy of scheduling technicians for rotating "on-call" weeks in which they "had to be available 24/7 to respond to service calls" and "could not use that time freely for their own purpose." *Id.* ¶ 46; *see also id.* ¶ 56. An on-call week would run from Monday at 5:00 p.m. through the following Monday at 7:59 a.m. *Id.* ¶ 46. Defendant paid technicians $22.47 per day during these on-call weeks, but "failed to pay Plaintiff and class members for the remainder of the time during which they were not free to use their time for their own purposes." *Id.* Plaintiff further alleges that Defendant did not have a policy permitting its employees to take a second 30-minute meal period on days they worked in excess of 10 hours. *Id.* ¶ 48.

On the basis of these facts, Plaintiff asserts nine causes of action on behalf of himself and the putative class for: (1) unpaid overtime; (2) unpaid minimum wage; (3) failure to provide meal periods; (4) failure to provide rest periods; (5) failure to provide accurate wage statements and maintain payroll records; (6) failure to pay wages upon termination; (7) failure to provide reporting time pay; (8) unlawful business practices; and (9) unfair business practices. *See id.* ¶¶ 39–115.

On July 21, 2017, Defendant removed the action to federal court under the Class Action Fairness Act ("CAFA"), 28 U.S.C. § 1332(d). *See* Dkt. No. 1. Defendant explains the delay by stating that Plaintiff's discovery responses, received on July 13, 2017, indicated that Plaintiff was seeking compensation for every minute class members spent "on call." *See id.* at 3–13. Given the small class size, Defendant asserts this information was essential to establishing that the putative class action would reach CAFA's $5 million threshold. Dkt. No. 19 at 2–5.

## II. LEGAL STANDARD

### A. Removal Jurisdiction

A defendant may remove any civil action to federal court where the district court would have original jurisdiction over the action. 28 U.S.C. § 1441; *see also Caterpillar, Inc. v. Williams*, 482 U.S. 286, 392 (1987). To do so, a party seeking removal must file a notice of removal within 30 days of receiving the initial pleading or within 30 days of receiving "an amended pleading, motion, order or other paper from which it may first be ascertained that the case is one which is or has become removable." 28 U.S.C. § 1446(b)(1), (3). The notice must contain a "short and plain statement of the grounds for removal." *Id.* § 1446(a); *see also Ibarra v. Manheim Investments, Inc.*, 775 F.3d 1193, 1195 (9th Cir. 2015).

The removing party bears the burden of establishing removal jurisdiction. *Abrego Abrego v. Dow Chem. Co.*, 443 F.3d 676, 683–85 (9th Cir. 2006). A plaintiff may seek to remand a case to the state court from which it was removed if the district court lacks jurisdiction or if there was a defect in the removal procedure. 28 U.S.C. § 1447(c).

///

///

### B. Class Action Fairness Act

CAFA vests the district courts with original jurisdiction over civil actions in which the amount in controversy exceeds $5 million, there is minimal diversity of citizenship between the parties, and the action involves at least 100 class members. 28 U.S.C. § 1332(d). Under CAFA, "the claims of the individual class members shall be aggregated to determine whether the matter in controversy exceeds the sum or value of $5,000,000." 28 U.S.C. § 1332(d)(6).

## III. ANALYSIS

Here, Plaintiff challenges Defendant's removal procedure, contending that the notice is both untimely and fails to establish CAFA jurisdiction. Plaintiff does not dispute that the number of putative class members exceeds the jurisdictional requirement, or that the minimal diversity requirement is met. Rather, Plaintiff contends that Defendant failed to satisfy its burden of demonstrating that the amount in controversy exceeds $5 million. *See* Dkt. No. 15. The Court first addresses the timeliness of removal and then turns to the amount-in-controversy requirement.

### A. Timeliness

Plaintiff contends that the basis for CAFA jurisdiction was apparent from the face of the complaint, including the now-disputed amount in controversy. *See* Dkt. No. 15 at 4–6. "[R]emovability under § 1446(b) is determined through examination of the four corners of the applicable pleadings, not through subjective knowledge or a duty to make further inquiry." *Harris v. Bankers Life & Cas. Co.*, 425 F.3d 689, 694 (9th Cir. 2005); *cf. Durham v. Lockheed Martin Corp.*, 445 F.3d 1247, 1251 (9th Cir. 2006) ("[W]e don't charge defendants with notice of removability until they've received a paper that gives them enough information to remove.").

Here, the complaint states that Plaintiff seeks "damages, unpaid wages, penalties, injunctive relief, and attorneys' fees in excess of [] $25,000." Compl., Prayer for Relief ¶ 1. He also states that his own "share of damages, penalties and other relief sought in this action does not exceed $75,000." *Id.* ¶ 1. In the motion to remand, Plaintiff suggests that Defendant could have applied "simple math" to these allegations in order to determine that the amount in controversy is over $5 million. *See* Dkt. No. 15 at 6, n.2. Plaintiff states that the complaint indicates the damages "incurred by him" ranged from $25,000 to $75,000, and this could be extrapolated to the

3

approximately 100 putative class members. *Id.* Accordingly, Plaintiff argues, "the amount in controversy could be calculated at $7.5 million (*i.e.*, $75,000 times 100 potential plaintiffs)." *Id.*

The Court agrees with Defendant that the amount in controversy was ambiguous from the face of the complaint. First, the "simple math" that Plaintiff suggests Defendant should have applied assumes that Plaintiff is seeking *individual* damages in excess of $25,000. Yet it is equally plausible to interpret the Prayer for Relief as seeking *total* damages for the putative class in excess of $25,000. The only other indication of the amount in controversy in the complaint is the allegation that Plaintiff's share of any damages is less than $75,000. *See* Compl. ¶ 1. However, the complaint does not provide a floor on Plaintiff's individual damages. Defendant, therefore, could not simply multiply the requested damages by the number of putative class members to determine the amount in controversy.

Defendant also did not have an affirmative duty to investigate the removability of the action. *See Harris*, 425 F.3d at 694. Yet even if Defendant had attempted to do so, the complaint does not unambiguously identify the scope of the alleged Labor Code violations. Plaintiff's primary allegation against Defendant involves technicians' uncompensated "on-call" time. *See* Compl. ¶¶ 25, 28, 45–47. Under California law, whether on call time is compensable turns on the level of control the employer exerts on employees. Courts look to a variety of factors to analyze this level of control, including whether employees actually engaged in personal activities while on call and whether the on-call time was "primarily for the benefit of the employer and its business." *See Mendiola v. CPS Sec. Sols., Inc.*, 60 Cal. 4th 833, 840–41 (Cal. 2015). Because the complaint does not define the level of control Defendant allegedly had over on-call technicians' time, it was reasonable for Defendant to clarify whether Plaintiff was seeking compensation for every minute during a technician's on-call week. As discussed in more detail below, this clarification was especially necessary because compensation for this on-call time is the primary driver of the amount in controversy. *See* Section III.B.

Plaintiff would have the Court penalize Defendant for conducting some discovery before filing its notice of removal. The Court declines to do so. As the Ninth Circuit has stated, CAFA grants parties "time to develop in state court the facts necessary to support federal jurisdiction."

4

*Abrego*, 443 F.3d at 691. That is precisely what Defendant did here and the Court finds that removability of the action under CAFA was not apparent until at least the parties' meet and confer call on July 10, 2017. *See* Dkt. No. 1-1, Ex. E. Only at that time did Plaintiff confirm that he is "alleging that he was under [D]efendant's control for the entire time that he was on-call (24/7) and is seeking unpaid wages for that entire time." *Id.* Accordingly, the Court finds that Defendant timely filed for removal on July 21, 2017.

### B. Amount in Controversy

Plaintiff next challenges whether Defendant has established by a preponderance of the evidence that the amount in controversy exceeds CAFA's $5 million jurisdictional threshold. When evaluating the amount in controversy, the Court must determine whether it is "more likely than not" that the amount in controversy exceeds $5 million. *See Bryan v. Wal-Mart Stores, Inc.*, No. C 08-5221 SI, 2009 WL 440485, at *2 (N.D. Cal. Feb. 23, 2009). The Court must assume the truth of the allegations in the complaint and that a jury will return a verdict for the plaintiff on all the alleged claims. *Id.*

A defendant may not establish federal jurisdiction "by mere speculation and conjecture, [or] with unreasonable assumptions." *Ibarra*, 775 F.3d at 1197–98. Instead it must rely on "real evidence and the reality of what is at stake in the litigation." *Id.* Nevertheless, "a defendant's notice of removal need include only a plausible allegation that the amount in controversy exceeds the jurisdictional threshold." *Dart Cherokee Basin Operating Co., LLC v. Owens*, 135 S. Ct. 547, 554 (2014). Courts have found that declarations or affidavits may be sufficient to satisfy this burden. *See, e.g.*, *Lewis v. Verizon*, 627 F.3d 395, 397 (9th Cir. 2010) (finding an affidavit showing that "potential damages could exceed the jurisdictional amount" sufficient to satisfy the removing defendant's burden). A defendant is only required to submit evidence establishing the amount in controversy "when the plaintiff contests, or the court questions, the defendant's allegation." *Id.* The Ninth Circuit has not determined whether the plaintiff must also submit evidence, and instead has held that the district court should "set a reasonable procedure . . . so that each side has a fair opportunity to submit proof." *See id.* at 1199–1200.

Here, Plaintiff contends that Defendant did not meet its initial burden of proof. The Court

5

begins with Plaintiff's first claim for unpaid overtime compensation as it constitutes the majority of Defendant's proffered amount in controversy. *See* Dkt. No. 19 at 14–17, 25.

As an initial matter, to the extent Plaintiff is challenging Defendant's declarations filed in support of removal, the Court finds that Ms. Moss, as one of Defendant's human resources employees, established a sufficient foundation for her statements, particularly given the early stage of the litigation. Ms. Moss explained that her knowledge was based on her normal business responsibilities and her personal review of Defendant's business records. There is no need, under the circumstances presented, for Defendant to provide the business records themselves. *See Lewis*, 627 F.3d at 397; *see also Altamirano v. Shaw Indus., Inc.*, No. C-13-0939 EMC, 2013 WL 2950600, at *10 (N.D. Cal. June 14, 2013) (rejecting argument that the defendants have to produce records for precise calculations because "requiring Defendants to produce this information would amount to requiring them to prove up Plaintiff's case on the merits").

Based on these declarations and the allegations in the complaint, Defendant calculates that Plaintiff is seeking over $6 million in unpaid overtime for technicians' on-call time alone. In reaching this figure, Defendant relies on several assumptions about technicians' work schedule and compensation. *See* Dkt. No. 19 at 14–15, & n.5–7. Plaintiff challenges just two of these underlying assumptions. First, Defendant assumes that while on call, technicians responded to — and were compensated for — an average of 10.68 hours responding to on-call work (*i.e.*, "call out" hours). Second, Defendant assumes technicians worked — and again were compensated for — 15 hours of overtime a week. Defendant then included this compensation in its calculations for the class members' regular rate of pay. *Id.* Plaintiff states that in doing so, Defendant erroneously extrapolated from information about the named Plaintiff to the class a whole because Defendant based its assumption that technicians were compensated for 10.68 call out hours on Plaintiff's own payroll records. *See* Dkt. No. 1-2 ¶ 4. And Defendant based its assumption that class members worked 15 hours of overtime a week on the allegation that the named Plaintiff "typically" worked 40–55 hours a week and that his claims are typical of the other putative class members. *See* Compl. ¶¶ 4, 18(b).

A defendant may "rel[y] on a chain of reasoning that includes assumptions to satisfy its

6

burden" so long as "the chain of reasoning and its underlying assumptions [are] reasonable." *LaCross v. Knight Transp. Inc.*, 775 F.3d 1200, 1201 (9th Cir. 2015). Moreover, CAFA does not require Defendant to "conduct a fact-specific inquiry" into the schedule or exact compensation of each potential class member or "try the case themselves" before removing. *See Bryan*, 2009 WL 440485, at *3; *see also Korn v. Polo Ralph Lauren Corp.*, 536 F. Supp. 2d 1199, 1204–05 (E.D. Cal. 2008).

The Court finds that Defendant's extrapolation from Plaintiff's average work schedule is reasonable here in light of the other evidence in the record that indicates Plaintiff and the putative class worked similar schedules. *Cf. Bryant v. Serv. Corp. Int'l*, No. C 08-01190SI, 2008 WL 2002515, at *4, n.3 (N.D. Cal. May 7, 2008) (finding use of plaintiff's average hourly wage "an appropriate substitute" for the class for purposes of removal jurisdiction); *Campbell v. Vitran Exp., Inc.*, 471 F. App'x 646, 649 (9th Cir. 2012) (finding removal proper where the defendant relied on the named plaintiffs' schedules in calculating the amount in controversy).[1] Putative class members were all scheduled to work 8 hours a day, 5 days a week, Dkt. No. 19-1 ¶ 3, and had the same on-call schedule from Monday at 5:00 p.m. to the following Monday at 7:59 a.m., *see* Compl. ¶ 46. All putative class members are current or former "Field Technicians or other functionally equivalent position[s] in California," *id.* ¶ 13, and there are no allegations from which Defendant or the Court should assume that they performed substantially different work — either in volume or substance. Plaintiff further alleges that Defendant would pay technicians for the "hours they spent responding to service calls," indicating that class members responded to at least some calls during the on-call week. *Id.*

Unlike Plaintiff's cited cases, Defendant's assumptions here are not about the "violation rate" for unpaid overtime or missed meal and rest breaks. *See, e.g.*, *Ibarra*, 775 F.3d at 1195. Rather, Defendant uses the compensated call out and overtime hours to determine class members' "regular rate of pay." *Cf.* Cal. Labor Code § 510 (setting overtime compensation as 1.5 times an employee's "regular rate of pay" and double overtime as 2 times his "regular rate of pay"); DLSE

---

[1] As an unpublished Ninth Circuit decision, *Campbell v. Vitran Exp., Inc.* is not precedent, but may be considered for its persuasive value. *See* Fed. R. App. P. 32.1; CTA9 Rule 36-3.

7

2002 Enforcement Policies & Interpretations Manual (Revised), § 49.2.5 (calculating "regular rate of pay" by dividing the employee's total earnings for the week by the number of hours worked). Total earnings, in turn, include "all amounts [paid] for labor performed by employees." Cal. Lab. Code § 200 (defining "wages"); *see also* DLSE § 49.1. This approach, which factors in all weekly compensation, is in keeping with the Labor Code and the complaint, which accuses Defendant of failing to incorporate all earnings in its actual overtime payments. *See* Compl. ¶¶ 51–53. The violation rate, on the other hand, is supplied by the complaint and Plaintiff's discovery responses, which confirm that Plaintiff is seeking compensation for "every minute" that technicians spent on call and that Defendant only paid employees a flat per diem rate for this time. *See id.* ¶ 46.

Finally, even if the Court agreed that Defendant's two assumptions are flawed, Plaintiff's claim for unpaid overtime still exceeds the $5 million amount in controversy. Assuming Plaintiff was not compensated for any call out or overtime hours, Plaintiff's regular rate of pay would decrease from $20.01 in Defendant's calculations, *see* Dkt. No. 19 at 15, n.6, to $16.07.[2] Using this revised figure in Defendant's calculations, Plaintiff is still conservatively seeking over $5 million in unpaid overtime for putative class members' on-call time alone. The Court also notes that Defendant's conservative calculations assume a minimum wage of $8.00, and do not account for the increase in minimum wage over time in 2014 ($9.00), 2016 ($10.00) and 2017 ($10.50). In short, the Court finds that Defendant has established by a preponderance of the evidence that the amount in controversy exceeds $5 million.

///
///
///
///
///
///
///

---

[2] [(40 hours in a workweek x $36.13 an hour) + (119 on-call hours x $8.00 an hour)]/ 159 hours worked in an on-call week = $16.07

8

## IV. CONCLUSION

Accordingly, the Court **DENIES** Plaintiff's motion to remand. The Court further **SETS** the initial case management conference for November 28, 2017, at 2:00 p.m. The parties shall submit a revised joint statement by November 21, 2017.

**IT IS SO ORDERED.**

Dated: 11/2/2017

HAYWOOD S. GILLIAM, JR.
United States District Judge