1   Raul Perez (SBN 174687)
    Raul.Perez@capstonelawyers.com
2   Arnab Banerjee (SBN 252618)
    Arnab.Banerjee@capstonelawyers.com
3   Brandon Brouillette (SBN 273156)
    Brandon.Brouillette@capstonelawyers.com
4   Capstone Law APC
    1875 Century Park East, Suite 1000
5   Los Angeles, California 90067
    Telephone:      (310) 556-4811
6   Facsimile:      (310) 943-0396

7   Attorneys for Plaintiff Jesse Black

8                       UNITED STATES DISTRICT COURT

9                     NORTHERN DISTRICT OF CALIFORNIA

10

11  JESSE BLACK, individually, and on behalf of      Case No.:  4:17-cv-04151-HSG
    other members of the general public similarly
12  situated,                                        **NOTICE OF MOTION AND MOTION FOR
                                                     FINAL APPROVAL OF CLASS ACTION
13                  Plaintiff,                        SETTLEMENT; MEMORANDUM OF
                                                     POINTS AND AUTHORITIES IN SUPPORT**
14           vs.
                                                     Date:      June 13, 2019
15  T-MOBILE USA, INC., a Delaware                   Time:      2:00 p.m.
    corporation; and DOES 1 through 10, inclusive,   Place:     Courtroom 2
16
                    Defendants.
17

18

19

20

21

22

23

24

25

26

27

28

1   **TO THE HONORABLE COURT, ALL PARTIES, AND THEIR ATTORNEYS OF RECORD:**

2       **PLEASE TAKE NOTICE** that on June 13, 2019 at 2:00 p.m., or as soon thereafter as counsel

3   may be heard, in Courtroom 2 of the above-captioned court, located at 1301 Clay Street, Oakland, CA

4   94612, the Honorable Haywood S. Gilliam, Jr. presiding, Plaintiff Jesse Black will, and hereby does,

5   move this Court for entry of an order and judgment granting final approval of the class action settlement

6   and all agreed-upon terms therein. This Motion, unopposed by Defendant T-Mobile USA, Inc., seeks

7   final approval of: (1) the Joint Stipulation of Class Action Settlement and Release; (2) settlement

8   payments to Participating Class Members and the LWDA; and (3) and costs/expenses to the settlement

9   administrator, Rust Consulting, Inc.

10      This Motion is based upon: (1) this Notice of Motion and Motion; (2) the Memorandum of

11  Points and Authorities in Support of Motion for Final Approval of Class Action Settlement; (3) the

12  Declaration of Raul Perez; (4) the Declaration of Abigail Schwartz; (5) the [Proposed] Order Granting

13  Final Approval of the Class Action Settlement; (6) the records, pleadings, and papers filed in this action;

14  and (7) upon such other documentary and oral evidence or argument as may be presented to the Court at

15  or prior to the hearing of this Motion.

16

17  Dated: May 9, 2019                          Respectfully submitted,

18                                              Capstone Law APC

19                                          By: /s/ Arnab Banerjee
                                                Raul Perez
20                                              Arnab Banerjee
                                                Brandon Brouillette
21
                                                Plaintiff Jesse Black
22

23

24

25

26

27

28

1

**TABLE OF CONTENTS**

2

3  I.   INTRODUCTION ................................................................................................. 1

4  II.  FACTS AND PROCEDURE ................................................................................. 2

5        A.   Overview of the Litigation ........................................................................ 2

6        B.   Plaintiff's Counsel Conducted a Thorough Investigation of the Factual and Legal

7             Issues ......................................................................................................... 3

8        C.   The Parties Settled After Mediation ......................................................... 4

9        D.   The Proposed Settlement Fully Resolves Plaintiff's Claims ..................... 4

10            1.   Composition of the Settlement Class ............................................. 4

11            2.   Settlement Consideration ................................................................ 4

12            3.   Formula for Calculating Settlement Payments ............................... 5

13            4.   Release by the Settlement Class ..................................................... 6

14       E.   The Notice and Settlement Administration Process Were Completed Pursuant to the

15            Court's Preliminary Approval Order ......................................................... 6

16 III. ARGUMENT ....................................................................................................... 7

17       A.   The Standard for Final Approval Has Been Met ....................................... 7

18       B.   The Consideration Provided for the Class Claims Is Fair and Reasonable In Light of

19            the Amount in Controversy Discounted by the Risks of Continued Litigation ....... 8

20            1.   On-Call Claim ................................................................................. 9

21            2.   Reporting-Time Claim ................................................................... 10

22            3.   Meal Period Claim ........................................................................ 11

23            4.   Rest Period Claim ......................................................................... 11

24            5.   Wage Statement Claim .................................................................. 13

25            6.   Waiting-Time Penalty Claim ........................................................ 14

26            7.   The Consideration for Class Claims Fair and Reasonable ............ 15

27       C.   The Consideration Provided for the PAGA Claim Is Fair and Reasonable In Light of

28            the Amount in Controversy Discounted by the Risks of Continued Litigation ....... 15

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

D.    The Settlement Was Reached through Arm's-Length Bargaining in Which All
      Parties Were Represented by Experienced Counsel ..................................................... 18

E.    The Parties Conducted a Thorough Investigation of the Factual and Legal Issues ............... 19

F.    The Settlement Class Has Responded Positively to the Settlement .......................................... 20

G.    The Requested Payment to the Settlement Administrator Is Reasonable and Should
      Receive Final Approval ........................................................................................................ 20

IV.   CONCLUSION ......................................................................................................................... 21

1

## TABLE OF AUTHORITIES

2

3  STATE CASES

4  *7-Eleven Owners for Fair Franchising v. Southland Corp.*, 85 Cal. App. 4th 1135 (2000) ...................... 20

5  *Ali v. U.S.A. Cab Ltd.*, 176 Cal. App. 4th 1333 (2009) ................................................................. 12

6  *Amaral v. Cintas Corp No. 2*, 163 Cal. App. 4th 1157 (2008) ........................................................ 14

7  *Augustus v. ABM Security Services, Inc.*, 233 Cal. App. 4th 1065 (2014) ..................................... 12

8  *Duran v. U.S. Bank National Association*, 59 Cal. 4th 1 (2014) .................................................... 12

9  *Nordstrom Com. Cases*, 186 Cal. App. 4th 576 (2010) ................................................................. 18

10  *Tien v. Tenet Healthcare Corp.*, 209 Cal. App. 4th 1077 (2012) .................................................. 12

11

12  FEDERAL CASES

13  *Balderas v. Massage Envy Franchising, LLP,* 2014 WL 3610945 (N.D. Cal. July 21, 2014) .......................... 15

14  *Brown v. Fed. Express Corp.*, 249 F.R.D. 580 (C.D. Cal. 2008) .................................................... 13

15  *Casas v. Victoria's Secret Stores, LLC*, No. 2:14-cv-06412-GW-VBK (C.D. Cal. Dec. 1,

16      2015) .......................................................................................................................... 11

17  *Churchill Village, LLC v. General Electric*, 361 F.3d 566 (9th Cir. 2004) ................................... 20

18  *Cotter v. Lyft, Inc.*, 193 F. Supp. 3d 1030 (N.D. Cal. 2016) ....................................................... 16

19  *D'Amato v. Deutsche Bank*, 236 F.3d 78, 85 (2d Cir. 2001) ........................................................ 19

20  *Fleming v. Covidien*, 2011 WL 7563047 (C.D. Cal. 2011) ............................................................. 16

21  *Hanlon v. Chrysler Corp.*, 150 F.3d 1011 (9th Cir. 1998) ....................................................... 7, 8

22  *Hopson v. Hanesbrands Inc.*, Case No. 08-00844, 2009 U.S. Dist. LEXIS 33900 (N.D.

23      Cal. Apr. 3, 2009) .......................................................................................................... 18

24  *In re Apple Computer, Inc. Derivative Litig.*, No. C 06-4128 JF (HRL), 2008 U.S. Dist.

25      LEXIS 108195 (N.D. Cal. Nov. 5, 2008) ............................................................................ 19

26  *In Re Armored Car Antitrust Litig.,* 472 F. Supp. 1357 (N.D. Ga. 1979) ........................................ 15

27  *In Re Four Seasons Secs. Laws Litig.,* 58 F.R.D. 19 (W.D. Okla.1972) .......................................... 15

28  *In re Global Crossing Sec. and ERISA Litig.*, 225 F.R.D. 436 (S.D.N.Y. 2004) ............................... 8

1   *In re IKON Office Solutions, Inc. Sec. Litig.*, 194 F.R.D. 166 (E.D. Pa. 2000) ............................................. 8

2   *In re Michael Milken and Assoc. Sec. Litig.*, 150 F.R.D. 57 (S.D.N.Y. 1993) ................................................. 8

3   *In re Warfarin Sodium Antitrust Litig.,* 212 F.R.D. 231 (D. Del. 2002) .......................................................... 15

4   *Jimenez v. Allstate Ins. Co.*, 2012 WL 1366052 (C.D. Cal. Apr. 18, 2012) ................................................... 12

5   *Loud v. Eden Med. Ctr.*, 2013 U.S. Dist. LEXIS 122873 (N.D. Cal. Aug. 28, 2013) ................................ 14

6   *Molski v. Gleich*, 318 F.3d 937 (9th Cir. 2003) ................................................................................................ 8

7   *Nat'l Rural Telecom. Coop. v. DIRECTV, Inc.*, 221 F.R.D. 523 (C.D. Cal. 2004) ..................................... 8

8   *Newman v. Stein*, 464 F. 2d 689 (2d Cir. 1972) .............................................................................................. 8

9   *Officers for Justice v. Civil Serv. Comm'n*, 688 F.2d 615 (9th Cir. 1982) .................................................... 7

10  *Rodriguez v. West Publ'g Corp.*, 563 F.3d 948 (9th Cir. 2009) ...................................................................... 7

11

12  **STATE STATUTES**

13  8 Cal. Code of Regs. § 11070(5) (Wage Order No. 7) .................................................................................. 10

14  8 Cal. Code of Regs. § 11070(5)(A) (Wage Order No. 7) ........................................................................... 10

15  8 Cal. Code Regs. § 11040(5)(A) ...................................................................................................................... 3

16  Cal. Bus. & Prof. Code §§ 17200 *et seq.* (Unfair Comp. Law (UCL)) ........................................................ 3

17  Cal. Lab. Code § 201 ........................................................................................................................................... 3

18  Cal. Lab. Code § 202 ........................................................................................................................................... 3

19  Cal. Lab. Code § 226(a) ...................................................................................................................................... 3

20  Cal. Lab. Code § 226(e) .................................................................................................................................... 14

21  Cal. Lab. Code § 226.7 ........................................................................................................................................ 3

22  Cal. Lab. Code § 510 ........................................................................................................................................... 3

23  Cal. Lab. Code § 512(a) ...................................................................................................................................... 3

24  Cal. Lab. Code § 1174(d) .................................................................................................................................... 3

25  Cal. Lab. Code § 1182.12 .................................................................................................................................... 3

26  Cal. Lab. Code § 1194 ......................................................................................................................................... 3

27  Cal. Lab. Code § 1197 ......................................................................................................................................... 3

28  Cal. Lab. Code § 1197.1 ...................................................................................................................................... 3

Cal. Lab. Code § 1198..................................................................................................................3, 10

Cal. Lab. Code §§ 2698 *et seq.* (Priv. Atty's. Gen. Act (PAGA)) ...................................... 15, 16, 18

Cal. Labor Code § 203 ....................................................................................................................... 14


SECONDARY AUTHORITIES

Manual for Complex Litigation (4th ed. 2004) .................................................................................. 7

MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT

1      **MEMORANDUM OF POINTS AND AUTHORITIES**

2  **I.      INTRODUCTION**

3          On February 8, 2019, the Court granted preliminary approval of the Joint Stipulation of Class

4  Action Settlement and Release[1] and approved distribution of the Notice of Class Action Settlement

5  ("Class Notice") to all Class Members. Class Members were given 45 days to opt out or object to the

6  Settlement ("Response Deadline"). Plaintiff is pleased to report that to date:  (1) not a single Class

7  Member has objected to the Settlement; (2) only one Class Member opted out of the Settlement Class;

8  (3) the average payment from the Net Settlement Amount is approximately $3,110, and the highest is

9  approximately $3,970. (Declaration of Abigail Schwartz ["Schwartz Decl."] ¶¶ 15-16.)

10          Plaintiff now seeks final approval of this Settlement with Defendant T-Mobile USA, Inc.

11  ("Defendant" or "T-Mobile") (collectively with Plaintiff, the "Parties"). The principal terms of the

12  Settlement provide for the following:

13      (1)      Conditional certification of a Settlement Class defined as:  All persons who have worked

14              for Defendant as non-exempt, hourly-paid field technicians in California at any time

15              from February 1, 2013 through February 8, 2019.

16      (2)      A Class Settlement Amount of $980,000. The Class Settlement Amount includes:

17              (a)      A Net Settlement Amount of approximately $594,580 (the Class Settlement

18                      Amount minus the requested Attorneys' Fees and Costs, Settlement

19                      Administration Costs, the Labor and Workforce Development Agency

20                      ["LWDA"] Payment, and the requested Class Representative Enhancement

21                      Payment), which will be allocated to all Participating Class Members on a pro-

22                      rata basis according to the number of weeks that each Participating Class

23                      Member worked during the Class Period.  **Because the Class Settlement**

24                      **Amount is non-reversionary, 100% of the Net Settlement Amount will be**

25                      **paid to all Class Members who do not opt out of the Settlement Class, and**

26                      **without the need to submit claims for payment.**

27

28  ───────────────────
    [1] Hereinafter, "Settlement" or "Settlement Agreement."  Unless indicated otherwise, all
    capitalized terms used herein have the same meaning as those defined by the Settlement Agreement.

     (b)     Attorneys' fees not to exceed one-third of the Class Settlement Amount (or $326,667) and litigation costs and expenses not to exceed $20,000, to Capstone Law APC ("Plaintiff's Counsel").

     (c)     A $18,750 payment to the LWDA pursuant to the Labor Code Private Attorneys General Act of 2004 (PAGA).

     (d)     Settlement Administration Costs of $10,000 to the Court-appointed settlement administrator, Rust Consulting, Inc. ("Rust").

     (e)     A Class Representative Enhancement Payment of $10,000 to Jesse Black for his service on behalf of the Settlement Class and for agreeing to a broader release than those required of other Class Members.

An objective evaluation of the Settlement confirms that the relief negotiated on the Class' behalf is fair, reasonable, and valuable. The Settlement was negotiated by the Parties at arm's length with helpful guidance from the Honorable Michael D. Marcus (Ret.), an experienced and well-respected class action mediator, and the Settlement confers substantial benefits to Class Members. The relief offered by the Settlement to Class Members—averaging approximately $3,110—is particularly impressive when viewed against the difficulties encountered by plaintiffs pursuing wage and hour cases. Indeed, by settling now rather than proceeding to trial, Class Members will not have to wait (possibly years) for relief, nor will they have to bear the risk of class certification being denied or of Defendant prevailing at trial.

Accordingly, given the Settlement's favorable terms and the manner in which these terms were negotiated and received by Class Members, Plaintiff respectfully requests that the Court grant this Motion for Final Approval of the Settlement Agreement and retain jurisdiction to enforce the Settlement.

## II.   FACTS AND PROCEDURE

### A.   Overview of the Litigation

Plaintiff Jesse Black worked for Defendant as a field technician from October 2008 to December 2015. As a field technician, Mr. Black was responsible for monitoring, maintaining, and upgrading cellular sites in the Oakland, Alameda, and San Leandro, California.

On January 31, 2017, Plaintiff filed a class action alleging Defendant's violation of the following

1   California Labor Code provisions: (1) Sections 510 and 1198 (unpaid overtime); (2) Sections 1182.12,

2   1194, 1197, 1197.1, and 1198 (unpaid minimum wages); (3) Sections 226.7, 512(a), and 1198

3   (noncompliant meal breaks); (4) Sections 226.7 and 1198 (noncompliant rest breaks); (5) Sections

4   226(a), 1174(d), and 1198 (non-compliant wage statements and failure to maintain payroll records);

5   (6) Sections 201 and 202 (untimely payment of wages upon termination); and (7) Section 1198 and

6   California Code of Regulations Title 8, Section 11040 Subdivisions 5(A) (failure to provide reporting

7   time pay).  Plaintiff also alleged violations of California Business & Professions Code sections 17200, *et*

8   *seq.* (unlawful business practices and unfair business practices). (Declaration of Raul Perez ["Perez

9   Decl."] ¶ 2.)

10          On July 21, 2017, Defendant removed the action to federal court under the Class Action Fairness

11   Act ("CAFA"), 28 U.S.C. § 1332(d). On August 21, 2017, Plaintiff moved to remand the action back to

12   state court. Following contested briefing, the Court denied Plaintiff's motion to remand on November 2,

13   2017. (Perez Decl. ¶ 3.)

14          **B.      Plaintiff's Counsel Conducted a Thorough Investigation of the Factual and Legal**

15                   **Issues**

16          The Settlement is the product of informed negotiations following extensive investigation by

17   Plaintiff's Counsel. During this matter's pendency, the Parties thoroughly investigated and researched

18   the claims in controversy, their defenses, and the developing body of law. The investigation entailed the

19   exchange of information pursuant to formal and informal discovery methods, including interrogatories

20   and document requests. In the course of written discovery, Plaintiff's Counsel received and analyzed

21   over 1,600 pages of documents, including Defendant's written policies regarding the claims at issue, and

22   the time and payroll records for the entire putative class. In addition to written discovery, Plaintiff's

23   Counsel also defended Plaintiff's deposition on March 7, 2018. (Perez Decl. ¶ 4.)

24          Overall, Plaintiff's Counsel performed an exhaustive investigation into the claims at issue, which

25   included:  (1) determining Plaintiff's suitability as a putative class representative through interviews,

26   background investigations, and analyses of his employment files and related records; (2) evaluating all of

27   Plaintiff's potential claims; (3) researching similar wage and hour class actions as to the claims brought,

28   the nature of the positions, and the type of employer; (4) analyzing Defendant's labor policies and

1   practices and the payroll records for the entire class; (5) researching settlements in similar cases; (6)

2   defending Plaintiff's deposition; (7) conducting a discounted valuation analysis of the claims; (8)

3   engaging and working with an expert to analyze time and payroll records; (9) drafting the mediation

4   brief; (10) participating in mediation; and (11) finalizing the Settlement Agreement. The extensive

5   document and data exchanges have allowed Plaintiff's Counsel to appreciate the strengths and

6   weaknesses of the claims alleged against Defendant and the benefits of the proposed Settlement. (Perez

7   Decl. ¶ 5.)

8       **C.      The Parties Settled After Mediation**

9           On August 21, 2018, the Parties participated in a full day of mediation with the Michael D.

10   Marcus (Ret.), an experienced mediator of wage and hour class actions.  Judge Marcus helped to manage

11   the Parties' expectations and provided a useful, neutral analysis of the issues and risks to both sides.

12   With Judge Marcus' guidance, the Parties were able to negotiate a complete settlement of Plaintiff's

13   claims.  The terms of the settlement are now set forth in complete and final form in the Joint Stipulation

14   of Class Action Settlement and Release.  At all times, the Parties' negotiations were adversarial and non-

15   collusive.  The Settlement therefore constitutes a fair, adequate, and reasonable compromise of the

16   claims at issue. (Perez Decl. ¶ 6.)

17       **D.      The Proposed Settlement Fully Resolves Plaintiff's Claims**

18           **1.      Composition of the Settlement Class**

19           The Settlement Class consists all persons who have worked for Defendant as non-exempt,

20   hourly-paid field technicians in California at any time from February 1, 2013 through February 8, 2019.

21   (Settlement Agreement ¶ 5.)

22           **2.      Settlement Consideration**

23           Plaintiff and Defendant have agreed to settle all class claims and representative claims alleged in

24   the action in exchange for the Class Settlement Amount of $980,000. The Class Settlement Amount

25   includes: (1) Individual Settlement Payments; (2) $326,667 in attorneys' fees and up to $20,000 in

26   litigation costs/expenses to Plaintiff's Counsel; (3) an $18,750 payment to the LWDA; (4) Settlement

27   Administration Costs of $10,000; and (5) a Class Representative Enhancement Payment of $10,000 to

28   Plaintiff Jesse Black for his service on behalf of the Settlement Class and for a general release of all

1    claims arising out of his employment. (Settlement Agreement ¶¶ 2, 7-8, 13, 25.)

2         Subject to the Court approving Attorneys' Fees and Costs, the payment to the LWDA,

3    Settlement Administration Costs, and the Class Representative Enhancement Payment, the Net

4    Settlement Amount will be distributed to all Participating Class Members. Because the Class Settlement

5    Amount is non-reversionary, 100% of the Net Settlement Amount will be distributed to Class Members,

6    and without the need to submit claims for payment. (*Id.* at ¶¶ 14, 34-35.)

7                    **3.      Formula for Calculating Settlement Payments**

8         Each Class Member's share of the Net Settlement Amount will be proportional to the number of

9    weeks he or she worked during the Class Period. (Settlement Agreement ¶ 35.)  Individual Settlement

10   Payments will be calculated as follows:

11        • Defendant will calculate the total number of Workweeks worked by each Class Member

12          during the Class Period and the aggregate total number of Workweeks worked by all

13          Class Members during the Class Period.

14        • To determine each Class Member's estimated "Individual Settlement Payment," the

15          Settlement Administrator will use the following formula:  The Net Settlement Amount

16          will be divided by the aggregate total number of Workweeks, resulting in the

17          "Workweek Value." Each Class Member's "Individual Settlement Payment" will be

18          calculated by multiplying each individual Class Member's total number of Workweeks

19          by the Workweek Value.

20        • The Individual Settlement Payment will be reduced by any required deductions for each

21          Participating Class Members as specifically set forth herein, including employee-side tax

22          withholdings or deductions.

23        • The entire Net Settlement Amount will be disbursed to all Class Members who do not

24          submit timely and valid Requests for Exclusion. If there are any valid and timely

25          Requests for Exclusion, the Settlement Administrator shall proportionately increase the

26          Individual Settlement Payment for each Participating Class Member according to the

27          number of Workweeks worked, so that the amount actually distributed to the Settlement

28          Class equals 100% of the Net Settlement Amount.

1    (Settlement Agreement ¶ 35.)

2            **4.        Release by the Settlement Class**

3            In exchange for the Class Settlement Amount, Plaintiff and Class Members who do not opt out

4    will agree to release the Released Parties for the Released Claims (including unknown claims; *see*

5    Settlement Agreement ¶ 27), which are defined as:

6            All claims, rights, demands, liabilities, and causes of action, arising from, or related to,
             the claims alleged or which could have been alleged in the proposed First Amended
7            Complaint based on the same set of operative pleaded facts, including: (i) all claims for
             unpaid wages, including overtime; (ii) all claims for meal and rest break violations; (iii)
8            all claims for unpaid minimum wages; (iv) all claims for the failure to timely pay wages
             upon termination; (v) all claims for the failure to timely pay wages during employment,
9            including but not limited to any on call time alleges to be compensable but not paid; (vi)
             all claims for wage statement violations; (vii) all claims for failure to pay reporting time
10           compensation or paid sick leave; and (viii) all claims asserted through California
             Business & Professions Code §§ 17200, et seq., and California Labor Code §§ 2698, et
11           seq. based on the preceding claims.

12   (Settlement Agreement ¶¶ 21, 27.)

13           **E.       The Notice and Settlement Administration Process Were Completed Pursuant to**

14                      **the Court's Preliminary Approval Order**

15           As authorized by the Court's Order preliminarily approving the Settlement Agreement, the

16   Parties engaged Rust to provide settlement administration services. (Schwartz Decl. ¶ 3.)  On February 8,

17   2019, Rust received the Class Notice prepared jointly by Plaintiff's Counsel and counsel for Defendant

18   and approved by the Court. (Schwartz Decl. ¶ 7.)  The Class Notice summarized the Settlement's

19   principal terms, provided Class Members with an estimate of how much they would be paid if the

20   Settlement received final approval, and advised Class Members about how to opt out of the Settlement

21   and how to object. (Schwartz Decl., Ex. A.)

22           Separately, counsel for Defendant provided Rust with a mailing list (the "Class List"), which

23   included each Class Member's full name, last known address, Social Security Number, and information

24   necessary to calculate payments. (Schwartz Decl. ¶ 8.)  The mailing addresses contained in the Class List

25   were processed and updated using the National Change of Address Database maintained by the U.S.

26   Postal Service. (*Id.* at ¶ 9.)  On March 11, 2019, Rust mailed Class Notices to Class Members via First-

27   Class U.S. mail. (*Id.* at ¶ 10.)  Class Members were given until April 25, 2019 to opt out or object to the

28   Settlement. (*Id.* at ¶ 11.) Plaintiff is pleased to report that no Class Members objected to the Settlement,

1  and only one Class Member, Mr. James Cline, opted out of the Settlement Class. (*Id.* at ¶¶ 15-16.)

2  **III.    ARGUMENT**

3      **A.    The Standard for Final Approval Has Been Met**

4      A class action may only be settled, dismissed, or compromised with the Court's approval. Fed.

5  R. Civ. Proc. 23(e). The process for court approval of a class action settlement is comprised of three

6  principal stages:

7      Preliminary Approval:  The proposed settlement agreement is preliminarily reviewed by the

8  Court for fairness, adequacy, and reasonableness. If the Court believes the settlement falls within the

9  range of reasonableness, such that proceeding to a formal fairness hearing is warranted, it orders notice

10 of the settlement disseminated to the class. *See* Manual for Complex Litigation § 21.632 (4th ed. 2004).

11     Class Notice:  Notice of the settlement is disseminated to the class, giving class members an

12 opportunity to object to the settlement's terms or preserve their right to bring an individual action by

13 opting out. *See id.*, § 21.633.

14     Final Approval:  A formal fairness or final-approval hearing is held by the Court, at which class

15 members can be heard regarding the settlement, and at which evidence and argument concerning the

16 fairness, adequacy, and reasonableness of the settlement is presented.[2]  Following the hearing, the Court

17 decides whether to approve the settlement and enter a final order and judgment. *See id.*, § 21.634.

18     The first two steps have been completed. The Court has preliminarily reviewed the proposed

19 settlement for fairness and found it to be within the range of reasonableness meriting court approval. (*See*

20 Order Granting Preliminary Approval of Class Settlement, Dkt. No. 56.)  In addition, the Settlement

21 Administrator has notified Class Members of the proposed settlement and upcoming fairness hearing as

22 directed by the Court. (*See generally* Schwartz Decl.)  Plaintiff now moves the Court to grant final

23

24     [2] A proposed class action settlement may be approved if the Court, after allowing absent class members an opportunity to be heard, finds that the settlement is "fair, reasonable, and adequate."  In
25 making this determination, "the court's intrusion upon what is otherwise a private consensual agreement negotiated between the parties to a lawsuit must be limited to the extent necessary to reach a reasoned
26 judgment that the agreement is not the product of fraud or overreaching by, or collusion between, the negotiating parties, and that the settlement, taken as a whole, is fair, reasonable and adequate to all
27 concerned." *Rodriguez v. West Publ'g Corp.*, 563 F.3d 948, 965 (9th Cir. 2009) (*quoting Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1020 (9th Cir. 1998)); *see also Officers for Justice v. Civil Serv.*
28 *Comm'n*, 688 F.2d 615, 625 (9th Cir. 1982)  ("voluntary conciliation and settlement are the preferred means of dispute resolution. This is especially true in complex class action litigation . . . .").

approval of the proposed settlement.

The decision about whether to approve the proposed settlement is committed to the sound discretion of the trial judge, and will not be overturned except upon a strong showing of a clear abuse of discretion. *Hanlon*, 150 F.3d at 1026-1027.  The Ninth Circuit has set forth a list of non-exclusive factors that a district court should consider in deciding whether to grant final approval, namely: (1) the strength of plaintiffs' case, and the risk, expense, complexity, and likely duration of further litigation; (2) the risk of maintaining class action status throughout the trial; (3) the amount offered in settlement; (4) the extent of discovery completed, and the stage of the proceedings; (5) the experience and views of counsel; and (6) the reaction of the class members to the proposed settlement. *Id.* at 963 (*citing Molski v. Gleich*, 318 F.3d 937, 953 (9th Cir. 2003)).

These factors, which are discussed below, confirm that the proposed settlement is more than fair, reasonable, and adequate for Class Members. The settlement provides considerable value; Class Members need not bear the risk and delay associated with trial proceedings to obtain these benefits; and the Settlement has been met with substantial support and no opposition from Class Members.

**B.      The Consideration Provided for the Class Claims Is Fair and Reasonable In Light of the Amount in Controversy Discounted by the Risks of Continued Litigation**

Federal district courts recognize that there is an inherent "range of reasonableness" in determining whether to approve a settlement "which recognizes the uncertainties of law and fact in any particular case and the concomitant risks and costs necessarily inherent in taking any litigation to completion."  *Id.* at 188, *quoting Newman v. Stein*, 464 F. 2d 689, 693 (2d Cir. 1972).  *See Nat'l Rural Telecomm. Coop. v. Directv, Inc.*, 221 F.R.D. 523, 527 (C.D. Cal. 2004) ("well settled law that a proposed settlement may be acceptable even though it amounts to only a fraction of the potential recovery").[3]

As explained in detail below, relief provided for the release of Plaintiff's class claims is within

_____

[3] *See also In re Global Crossing Sec. and ERISA Litig.*, 225 F.R.D. 436, 460 (S.D.N.Y. 2004) ("settlement amount's ratio to the maximum potential recovery need not be the sole, or even dominant, consideration when assessing settlement's fairness"); *In re IKON Office Solutions, Inc. Sec. Litig.*, 194 F.R.D. 166, 184 (E.D. Pa. 2000) ("the fact that a proposed settlement constitutes a relatively small percentage of the most optimistic estimate does not, in itself, weigh against the settlement; rather the percentage should be considered in light of strength of the claims").

1   the range of reasonableness in light of the nature and magnitude of the claims being settled and the

2   various potential impediments to recovery.  Plaintiff determined an appropriate range of recovery for

3   settlement purposes by offsetting Defendant's maximum theoretical liability by:  (i) the strength of

4   Defendant's defenses on the merits; (ii) the risk of class certification being denied; (iii) the risk of losing

5   on any of a number of dispositive motions that could have been brought between certification and trial

6   (e.g., motions to decertify the class, motions for summary judgment, and/or motions in limine) that might

7   have eliminated all or some of Plaintiff's claims; (iv) the risk of losing at trial (including the Court

8   deeming the trial unmanageable on a representative basis); (v) the chances of a favorable verdict being

9   reversed on appeal; and (vi) the difficulties attendant to collecting on a judgment.

10                        **1.    On-Call Claim**

11          T-Mobile required all Field Technicians to work on-call shifts in addition to their normally

12   scheduled shifts. T-Mobile paid Field Technicians a flat stipend of approximately $25 to $30 to be on-

13   call the evening prior to when their next scheduled shift began. Plaintiff alleges that Class Members

14   should have been compensated for "on-call" hours because they were under T-Mobile's control.

15          Based on information and data produced by T-Mobile, Plaintiff estimated that Class Members

16   worked a total of approximately 22,340 on-call shifts during the Class Period. Plaintiff also determined

17   that the average hourly wage was approximately $35.30. Plaintiff estimated T-Mobile's exposure for the

18   on-call claim at $4,905,864: ($35.30 × 22,340 on-call shifts × 7 hours) – ($27.50 × 22,340) =

19   $4,905,864.

20          After calculating T-Mobile's potential exposure, Plaintiff determined an appropriate range of

21   recovery for settlement purposes by offsetting that exposure by the Discount Factors. With respect to

22   affirmative defenses, T-Mobile would have argued that the on-call time is not compensable because it

23   was "uncontrolled" standby. See 29 C.F.R. §785.17.  Whether on-call time in compensable turns on a

24   two-step analysis: first, "whether the restrictions on off-duty time are primarily directed toward the

25   fulfillment of the employer's requirements and policies," and second, "whether the employees' off-duty

26   time is so substantially restricted that they are unable to engage in private pursuits." *Madera Police*

27   *officers Assn. v. City of Madera*, 36 Cal. 3d 403 (1984). Specifically, T-Mobile would argue that

28   employees were not under its control, and were generally free to do whatever they wanted during this

1   time. This aspect of the claim was also especially vulnerable to summary judgment.

2           **2.**        **Reporting-Time Claim**

3           Plaintiff alleges that T-Mobile violated California Labor Code section 1198[4] and California

4   Code of Regulations, Title 8, section 11070(5) by failing to pay Class Members reporting-time pay when

5   they called-in for work (as in the case of "call-in" shifts) and were not put to work, or were put to work

6   for less than half their usual or scheduled day's work.  California Code of Regulations, Title 8, section

7   11070(5)(A), provides that "[e]ach workday an employee is required to report for work and does report,

8   but is not put to work or is furnished less than half said employee's usual or scheduled day's work, the

9   employee shall be paid for half the usual or scheduled day's work, but in no event for less than two (2)

10  hours nor more than four (4) hours, at the employee's regular rate of pay, which shall not be less than the

11  minimum wage."

12          Plaintiff's expert found that there were 3,7693 call-out shifts that were less than four hours in

13  length for which reporting time pay should have been paid and that the average call-out shift was 2.0

14  hours in duration. T-Mobile's total exposure is therefore measured by the difference of the reporting time

15  that should have been paid and the call-out time that was actually paid, which is calculated as follows:

16  (3,769 call-out shifts × 4 hours × $35.28) – (3,769 shifts × 2.0 hours × $35.28) = $265,940.

17          After calculating T-Mobile's potential exposure, Plaintiff determined an appropriate range of

18  recovery for settlement purposes by offsetting that exposure by the Discount Factors. With respect to

19  affirmative defenses, T-Mobile would have argued that its official policy is to pay reporting time in every

20  instance where it is due, and any instances of reporting-time pay not having been paid to Class Members

21  are rare deviations from that policy.[5] Also, this claim was also especially vulnerable to summary

22

---

23      [4] California Labor Code section 1198 makes it illegal to employ an employee under conditions of labor that are prohibited by the applicable wage order.  California Labor Code section 1198 requires

24  that ". . . the standard conditions of labor fixed by the commission shall be the . . . standard conditions of labor for employees. The employment of any employee . . . under conditions of labor prohibited by the

25  order is unlawful."
    [5] "The minimum reporting time pay for any shift is two hours; the maximum reporting time pay

26  is four hours. Store associates shouldn't be scheduled for less than two-hour shifts. For example, if an associate shows up for a shift scheduled for four hours and only works for one hour, she or he will still be

27  paid for two hours.  Every effort should be made to have associates work at least the two-hour minimum by replenishing stock, processing freight, cleaning, etc.  If an associate leaves early due to illness or

28  another personal reason and hasn't worked a minimum of two hours, she or he will be automatically paid for two hours."

1    judgment.  *See Casas v. Victoria's Secret Stores, LLC*, No. 2:14-cv-06412-GW-VBK (C.D. Cal. Dec. 1,

2    2015), Dkt. No. 33 ("The Court agrees with Plaintiffs, to an extent. [Defendant's] call-in scheduling

3    policy is somewhat unfriendly to employees and disrespects their time. But the Wage Order's reporting-

4    time provisions do not provide a remedy. Plaintiffs' second claim would be Dismissed With Prejudice").

### 3.    Meal Period Claim

6        Plaintiff alleges that T-Mobile paid meal period premiums equal to one hour of an employee's

7    base hourly rate, rather than an employee's regular rate as required. "Regular rate" is a term of art, that is

8    calculated "by dividing the total remuneration for employment (except statutory exclusions) in any

9    workweek by the total number of hours actually worked [] in that workweek for which such

10   compensation was paid." *Huntington Memorial Hospital v. Super. Ct.*, 131 Cal. App. 4th 893, 905

11   (2005). Section 207(e) of the FLSA defines the regular rate as including "all remuneration for

12   employment paid to, or on behalf of, the employee," with the exception of a few enumerated statutory

13   exclusions not applicable here. Thus, all nondiscretionary bonuses must be included in the regular rate.

14   29 C.F.R. §§ 778.208-778.215. And only those few bonuses specifically enumerated as discretionary

15   under the FLSA may be excluded from the regular rate. See 29 C.F.R. §§ 778.200 and 778.208.

16       Plaintiff's expert found that 137 class members (76% of employees) were paid meal period

17   premiums during the same pay period in which they received either on-call pay and/or shift differential

18   pay and that the total difference in the amount that was paid compared to the amount that should have

19   been paid was $7,946, or $58 per person, over the relevant time period.

20       After calculating T-Mobile's potential exposure, Plaintiff determined an appropriate range of

21   recovery for settlement purposes by offsetting that exposure by the Discount Factors. With respect to

22   affirmative defenses, Defendants would have argued that that employers are not required to pay meal

23   period premiums at the "regular rate" and that Courts are split on whether meal period premiums need to

24   be paid at the hourly rate or the regular rate.  *See Wert v. U.S. Bancorp.*, 2014 U.S. Dist. LEXIS 175735

25   (S.D. Cal. Dec. 18, 2014); *Brum v. MarketSource, Inc.*, No. 2:17-cv-241-JAM-EFB, 2017 U.S. Dist.

26   LEXIS 178734  (E.D. Cal. Oct. 26, 2017).

### 4.    Rest Period Claim

28       Plaintiff alleges that he and other Class Members rarely had the opportunity to take rest breaks

1  and that the only "rest" they were provided during shifts was when they were driving from one location

2  to another. Although T-Mobile can point to its written rest break policies to state that it provided

3  employees with the opportunity to take rest breaks, the actual practice and T-Mobile "motto" has always

4  been to "Get that site back online." *Id.* And the Supreme Court has made clear an employer may not

5  undermine a formal policy of providing breaks by pressuring employees to perform their duties in ways

6  that omit breaks or otherwise discourage employees from taking breaks. *Brinker Rest. Corp. v. Super.*

7  *Ct.*, 53 Cal. 4th 1004 (2012).

8       Because T-Mobile did not keep records for employee rest breaks, Plaintiff conservatively

9  estimated that Class Members experienced at least one rest period violation for every week worked.

10  Based on information produced by T-Mobile, Plaintiff estimated that Class Members worked, in

11  aggregate, a total of approximately 26,000 weeks during the Class Period. Accordingly, T-Mobile's

12  estimated exposure for rest break premiums is follows: 26,000 workweeks × $35.28 = $917,280.

13       After calculating T-Mobile's potential exposure, Plaintiff determined an appropriate range of

14  recovery for settlement purposes by offsetting that exposure by the Discount Factors. With respect to

15  affirmative defenses, Defendants would have argued that its rest period policy complied with the Labor

16  Code, and that individual issues of law and fact—e.g., whether, and why, Class Members worked during

17  their rest periods—would have predominated over common issues. *See Duran v. U.S. Bank National*

18  *Association*, 59 Cal. 4th 1, 31 (2014) (reversing a verdict from a class trial); *Augustus v. ABM Security*

19  *Services, Inc.*, 233 Cal. App. 4th 1065 (2014) (finding that the trial court erred in granting summary

20  adjudication and summary judgment to security guards who were on call during rest breaks because

21  neither the Labor Code nor the applicable wage order mandated that employees be relieved of all duties

22  during rest breaks); *Tien v. Tenet Healthcare Corp.*, 209 Cal. App. 4th 1077, 1088 (2012) ("[T]he

23  reason, if any, that employees might not take their breaks were predominantly individualized questions

24  of fact not susceptible to class treatment."); *Ali v. U.S.A. Cab Ltd.*, 176 Cal. App. 4th 1333, 1341 (2009)

25  (affirming denial of certification because employees' declarations attesting to having taken meal and rest

26  breaks demonstrated that individualized inquiries were required to show harm); *Jimenez v. Allstate Ins.*

27  *Co.*, 2012 U.S. Dist. LEXIS 65328 (C.D. Cal. Apr. 18, 2012) (denying motion to certify meal and rest

28  break classes based on employer's practice of understaffing and overworking employees); *Brown v. Fed.*

1   *Express Corp.,* 249 F.R.D. 580, 587-88 (C.D. Cal. 2008) (denying certification of driver meal and rest

2   period claims based on the predominance of individual issues).

3                            **5.    Wage Statement Claim**

4          Based on the foregoing allegations, Plaintiff alleges that T-Mobile issued Class Members wage

5   statements that did not comply with Labor Code section 226(a). Labor Code section 226(a) provides, in

6   pertinent part, that an employer must provide an "accurate itemized" wage statement showing net and

7   gross wages earned. Cal. Lab. Code § 226(a). "[A]n employee has a statutory right to an accurate pay

8   stub." *Jaimez v. Daiohs USA, Inc.*, 181 Cal. App. 4th 1286, 1306 (2010) ("*Jaimez*"). "The purpose of the

9   wage statement requirement is to provide transparency as to the calculation of wages. A complying wage

10  statement accurately reports most of the information necessary for an employee to verify if he or she is

11  being properly paid in accordance with the law and that deductions from wages are proper." DLSE

12  Opinion Letter 2006.07.06 at 2. One of the requirements for a legally compliant wage statement is that it

13  includes "the name and address of the legal entity that is the employer." Labor Code § 226(a)(8)

14  (emphasis added).

15         Penalties for wage statement violations are calculated according to the formula provided by

16  Labor Code section 226(e)(1): An employee suffering injury as a result of a knowing and intentional

17  failure by an employer to comply with subdivision (a) is entitled to recover the greater of all actual

18  damages or fifty dollars ($50) for the initial pay period in which a violation occurs and one hundred

19  dollars ($100) per employee for each violation in a subsequent pay period, not to exceed an aggregate

20  penalty of four thousand dollars ($4,000), and is entitled to an award of costs and reasonable attorney's

21  fees.

22         However, T-Mobile would have argued (by analogy to case law interpreting penalties under

23  Labor Code sections 201 and 225.5), that it would be improper to assess $100 penalties for "subsequent

24  violations" as there has been no formal finding of any "initial" violations.  *See Amaral v. Cintas Corp.*

25  *No. 2*, 163 Cal. App. 4th 1157, 1209 (2008) ("Although common sense might suggest a "subsequent"

26  violation is nothing more than a violation that occurs at a later point in time after an "initial" violation,

27  this definition is inadequate because the statutes provide for multiple penalties for "each failure to pay

28  each employee" incurred in an initial violation . . . Until the employer has been notified that it is violating

1    a Labor Code provision (whether or not the Commissioner or court chooses to impose penalties), the

2    employer cannot be presumed to be aware that its continuing underpayment of employees is a

3    "violation" subject to penalties.")

4         While Plaintiff regards this interpretation as flawed, he decided to conservatively estimate T-

5    Mobile's maximum potential exposure for wage statement penalties by assessing a $50 penalty for all

6    pay periods at issue: 4,570 pay periods × $50 = $228,500.

7         Plaintiff had to further discount T-Mobile's exposure by the strength of its affirmative defenses

8    and the risks of continued litigation.  With respect to the affirmative defenses, defendants commonly

9    argue that, without more, wage statement claims are nothing but technical violations for which Class

10   Members suffer no injury.  Before Section 226(e) was amended, the dispositive issue was whether

11   "suffering injury" was satisfied by the deprivation of a legal right (i.e., an employer's provision of non-

12   compliant wage statements), or by consequential damages caused by the non-compliant wage

13   statements.  Employers in federal court have prevailed in arguing for the latter interpretation.  Even after

14   the enactment of section 226(e), some courts have held that this amendment merely clarifies existing law

15   and have held that plaintiffs must demonstrate actual injury.  *See Loud v. Eden Med. Ctr.*, 2013 U.S.

16   Dist. LEXIS 122873, **36-53 (N.D. Cal. Aug. 28, 2013) (granting summary judgment on wage

17   statement claim because plaintiff could not show injury due to defects and that incorrect wage

18   information is not willful).

19                    **6.    Waiting-Time Penalty Claim**

20        Where an employer "willfully fails" to timely pay wages upon termination of employment, "the

21   wages of the employee shall continue as a penalty from the due date thereof at the same rate until paid or

22   until an action therefor is commenced," for up to thirty days. *See* Cal. Labor Code § 203. (Perez Decl. ¶

23   35.)

24        Plaintiff estimated T-Mobile's maximum potential exposure for 203 penalties at $287,884,

25   which was calculated by taking the product of the following: 34 employees × $35.28/hour × 8 hours/day

26   × 30 days = $287,884. Plaintiff recognizes that T-Mobile would have argued that an employer has a

27   complete defense to a waiting-time penalty claim based on a showing of good faith. *Amaral v. Cintas*

28   *Corp No. 2*, 163 Cal. App. 4th 1157, 1204 (2008) ("So long as no other evidence suggests the employer

1  acted in bad faith, presentation of a good faith defense, based in law or fact, will negate a finding of

2  willfulness.")

3         **7.     The Consideration for Class Claims Fair and Reasonable**

4        Plaintiff estimated T-Mobile's maximum potential exposure for all class claims at approximately

5  $1.95 million:

| Summary of Defendant's Maximum Potential Exposure | |
|---|---:|
| On-Call Claim | $4,905,864 |
| Reporting-Time Claim | $265,940 |
| Meal Period Claim | $7,946 |
| Rest Period Claim | $917,280 |
| Wage Statement Claim | $228,500 |
| Waiting-Time Penalty Claim | $287,884 |
| **Total** | **$1,954,758.00** |

12        The actual Class Settlement Amount of $980,000 accordingly falls within the range of

13  reasonableness. Indeed, courts throughout the county routinely approve settlements that provide a similar

14  discounted range of the maximum potential recovery. *See, e.g., In re Warfarin Sodium Antitrust Litig.,* 212

15  F.R.D. 231, 256-58 (D. Del. 2002) (recognizing that a reasonable settlement amount can be 1.6% to 14% of

16  the total estimated damages); *In Re Armored Car Antitrust Litig.,* 472 F. Supp. 1357, 1373 (N.D. Ga. 1979)

17  (settlements with a value of 1% to 8% of the estimated total damages were approved); *In Re Four Seasons*

18  *Secs. Laws Litig.,* 58 F.R.D. 19, 37 (W.D. Okla.1972) (approving 8% of damages); *Balderas v. Massage Envy*

19  *Franchising, LLP,* 2014 WL 3610945, at *5 (N.D. Cal. July 21, 2014) (finding that settlement which

20  amounted to 8% of maximum recovery "[fell] within the range of possible initial approval based on the

21  strength of plaintiff's case and the risk and expense of continued litigation."); *In re Omnivision Techs., Inc.,* 559

22  F. Supp. 2d 1036, 1042 (N.D. Cal. 2008) (approving settlement of 6% to 8% of estimated damages).

23       **C.     The Consideration Provided for the PAGA Claim Is Fair and Reasonable In Light**

24           **of the Amount in Controversy Discounted by the Risks of Continued Litigation**

25        Based on the forgoing class allegations, Plaintiff alleges that T-Mobile is liable for civil penalties

26  under PAGA. While the method of calculating PAGA penalties is straightforward, the analysis becomes

27  more difficult for settlement purposes as PAGA penalty claims are only as strong as the underlying

28  predicate claims.

1    Plaintiff determined that aggrieved employees worked a combined total of 4,570 pay periods

2    during the PAGA statute of limitations period ("PAGA Period"). Statutory penalties would be calculated

3    according to Labor Code 2699(f)(2): If, at the time of the alleged violation, the person employs one or

4    more employees, the civil penalty is one hundred dollars ($100) for each aggrieved employee per pay

5    period for the initial violation and two hundred dollars ($200) for each aggrieved employee per pay

6    period for each subsequent violation.

7    However, some courts have interpreted Labor Code section 2699(f)(2) to impose the enhanced

8    "subsequent violation penalty" or "heightened penalty" only after an employer has been notified that its

9    conduct violates the Labor Code.  *See Trang v. Turbine Engine Components Technologies Corp.*, No.

10   CV 12–07658 DDP (RZx), 2012 WL 6618854 (C.D. Cal. Dec. 19, 2012) ("courts have held that

11   employers are not subject to heightened penalties for subsequent violations unless and until a court or

12   commissioner notifies the employer that it is in violation of the Labor Code"); *Amalgamated Transit*

13   *Union Local 1309, AFL-CIO v. Laidlaw Transit Services, Inc.*, No. 05cv1199–IEG–CAB, 2009 WL

14   2448430 (S.D. Cal. 2009) (finding that California law imposes the "subsequent violation penalty" only

15   after an employer has been notified its conduct violates the Labor Code).  While Plaintiff regards this

16   interpretation as flawed, he nonetheless recognizes that this interpretation has gained traction with some

17   courts, and elected therefore to conservatively estimate T-Mobile's maximum potential exposure for

18   PAGA penalties by assessing a $100 penalty for all pay periods during the one-year statute of

19   limitations.

20   It should be noted that the PAGA gives the Court wide latitude to reduce the amount of civil

21   penalties "based on the facts and circumstances of a particular case" when "to do otherwise would result

22   in an award that is unjust, arbitrary and oppressive, or confiscatory." Cal. Lab. Code § 2699(h). In

23   reducing PAGA penalties, courts have considered issues including whether the employees suffered

24   actual injury from the violations, whether the defendant was aware of the violations, and the employer's

25   willingness to fix the violation. *See Starbucks Corp.*, 30 Cal. App. 5th at 529 (awarding PAGA penalties

26   of only 0.2% of the maximum); *see also Cotter v. Lyft, Inc.*, 193 F. Supp. 3d 1030, 1037 (N.D. Cal.

27   2016); *Fleming v. Covidien*, 2011 WL 7563047, at *4 (C.D. Cal. 2011).

28   For example, during the penalty phase of trial in *Starbucks*, the plaintiff requested PAGA

penalties in the amount of approximately $70 million. The trial court instead awarded only $150,000—

**or 0.21% of the maximum**—and stated this reduction was warranted because imposing the maximum

penalty would be "unjust, arbitrary, and oppressive" based on Starbucks's "good faith attempts" to

comply with meal period obligations and because the court found the violations were minimal.

*Starbucks*, 30 Cal. App. 5th at 517. The Court of Appeal affirmed the lower court's reduced award of a

$150,000 penalty under PAGA. *Id.* at 529.

Likewise, in *Lyft*, the Court found that a $1 million PAGA settlement was fair and reasonable in

light of the unsettled nature of the law, resulting in a $2.52 per pay period award to the aggrieved

employees (there were 397,110 pay periods in a $1 million PAGA settlement, resulting in a 97.5%

reduction from the maximum). In *Covidien*, the Court reduced the potential penalties by over 82%,

awarding $500,000 for 28,742 pay periods at issue, or approximately $17.40 per pay period. *See also*,

e.g., *Thurman v. Bayshore Transit Mgmt.*, 203 Cal. App. 4th 1112, 1135-36 (2012) (affirming 30%

reduction under specified PAGA claim where the employer produced evidence that it took its obligations

seriously); *Elder v. Schwan Food Co.*, No. B223911,  2011 WL 1797254, at *5-*7 (Cal. Ct. App. May

12, 2011) (reversing trial court decision denying any civil penalties where violations had been proven,

remanding for the trial court to exercise discretion to reduce, but not wholly deny, civil penalties); *Li v. A

Perfect Day Franchise, Inc.*, No. 5:10-CV-01189-LHK, 2012 WL 2236752, at *17 (N.D. Cal. June 15,

2012) (denying PAGA penalties for violation of California Labor Code § 226 as redundant with

recovery on a class basis pursuant to California Labor Code § 226, directly); *Fleming v. Covidien Inc.*,

No. ED CV 10-01487 RGK (OPx), 2011 WL 7563047, at *4 (C.D. Cal. Aug. 12, 2011) (reducing

PAGA penalties from $2.8 million to $500,000.00); *Aguirre v. Genesis Logistics*, No. SACV 12-00687

JVS (ANx), 2013 WL 10936035 at *2-*3 (C.D. Cal. Dec. 30, 2013) (reducing penalty for past PAGA

violations from $1.8 million to $500,000.00, after rejecting numerous other PAGA claims).

Considering the issues, defenses, and the risks, a $25,000 settlement for PAGA penalties is a fair

and just result and furthers PAGA's objectives, and is not "unjust, arbitrary, and oppressive." Plaintiff

therefore determined an appropriate range of settlement for PAGA penalties as a percentage of the

settlement range that was consistent with other hybrid class/PAGA settlements approved by California

courts.  *See Dearaujo v. Regis Corp.*, No. 2:14-cv-01408-KJM-AC (E.D. Cal. June 29, 2016), 2016 WL

1    3549473 at *3 (preliminarily approving $1.95 million settlement containing $10,000 PAGA penalties

2    with $7,500 paid to LWDA); *Garcia v. Gordon Trucking, Inc.*, No. 1:10–CV–0324 AWI SKO (E.D.

3    Cal. Oct. 31, 2012), 2012 WL 5364575 at *7 (approving $3.9 million settlement containing $10,000

4    PAGA penalties with $7,500 paid to LWDA); *Chu v. Wells Fargo Invst., LLC*, No. C 05–4526 MHP

5    (N.D. Cal Feb. 16, 2011), 2011 WL 672645 at *1 (approving $6.9 million settlement containing $10,000

6    PAGA penalties with $7,500 paid to LWDA); *Guerrero v. R.R. Donnelley & Sons Co.*, Case No. RIC

7    10005196 (Riverside County Super. Ct. July 16, 2013; Judge Matthew C. Perantoni) (gross settlement

8    fund of $1,100,000, of which $3,000 (or 0.3%) was allocated to the settlement of PAGA penalties);

9    *Parra v. Aero Port Services, Inc.*, No. BC483451 (L.A. County Super. Ct. April 20, 2015; Judge Jane

10   Johnson) (gross settlement fund of approximately $1,458,900, of which $5,000 (or 0.3%) was allocated

11   to the settlement of PAGA penalties); *Thompson v. Smart & Final, Inc.*, No. BC497198 (L.A. County

12   Super. Ct. Nov. 18, 2014; Judge William F. Highberger) (gross settlement fund of $3,095,000, of which

13   approximately $13,333 (or 0.4%) was allocated to the settlement of PAGA penalties); *Chavez v. Vallarta*

14   *Food Enterprises, Inc.*, No. BC490630 (L.A. County Super. Ct. Nov. 10, 2014; Judge William F.

15   Highberger) (gross settlement fund of $1,545,900, of which $10,000 (or 0.6%) was allocated to the

16   settlement of PAGA penalties); *Coleman v. Estes Express Lines, Inc.*, No. BC429042 (L.A. County

17   Super. Ct. Oct. 3, 2013; Judge Kenneth R. Freeman) (gross settlement fund of $1,535,000, of which

18   $1,000 (or 0.1%) was allocated to the settlement of PAGA penalties).

19        Where PAGA penalties are negotiated in good faith and "there is no indication that [the] amount

20   was the result of self-interest at the expense of other Class Members," such amounts are generally

21   considered reasonable. *Hopson v. Hanesbrands Inc.*, Case No. 08-00844, 2009 U.S. Dist. LEXIS 33900,

22   at *24 (N.D. Cal. Apr. 3, 2009); *see, e.g., Nordstrom Com. Cases*, 186 Cal. App. 4th 576, 579 (2010)

23   ("[T]rial court did not abuse its discretion in approving a settlement which does not allocate any damages

24   to the PAGA claims.").

25        **D.      The Settlement Was Reached through Arm's-Length Bargaining in Which All**

26        **Parties Were Represented by Experienced Counsel**

27        As discussed above, the Settlement is the result of arm's-length negotiations by experienced

28   counsel. The Parties participated in mediation with the Hon. Michael D. Marcus (Ret.), a respected

1   mediator of wage and hour class actions. Judge Marcus helped to manage the Parties' expectations and

2   provided a useful, neutral analysis of the issues and risks to both sides. A mediator's participation weighs

3   considerably against any inference of a collusive settlement. *See In re Apple Computer, Inc. Derivative*

4   *Litig.*, No. C 06-4128 JF (HRL), 2008 U.S. Dist. LEXIS 108195 (N.D. Cal. Nov. 5, 2008); *D'Amato v.*

5   *Deutsche Bank*, 236 F.3d 78, 85 (2d Cir. 2001) (a "mediator's involvement in pre-certification settlement

6   negotiations helps to ensure that the proceedings were free of collusion and undue pressure.")  At all

7   times, the Parties' negotiations were adversarial and non-collusive.

8       The Parties were represented by experienced class action counsel throughout the negotiations

9   resulting in this Settlement. Plaintiff is represented by Capstone. Capstone employs seasoned class action

10  attorneys who regularly litigate wage and hour claims through certification and on the merits, and have

11  considerable experience settling wage and hour class actions. (*See* Perez Decl. ¶¶ 7-10; Ex. 1.)

12  Defendant is represented by Littler Mendelson P.C., which operates a respected wage and hour defense

13  practice.

14      As this Settlement is the "result of arms'-length negotiations by experienced class counsel, [it is]

15  entitled to 'an initial presumption of fairness.'" *Volkswage*n, 2016 WL 4010049, at *14 (internal citation

16  omitted).

17      **E.    The Parties Conducted a Thorough Investigation of the Factual and Legal Issues**

18      The Settlement is the product of informed negotiations following extensive investigation by

19  Plaintiff's Counsel. During this matter's pendency, the Parties thoroughly investigated and researched

20  the claims in controversy, their defenses, and the developing body of law. The investigation entailed the

21  exchange of information pursuant to formal and informal discovery methods, including interrogatories

22  and document requests. In response to this discovery, Plaintiff received and analyzed over 1,600 pages of

23  documents, including Defendant's written policies regarding the claims at issue, and employee time and

24  payroll records.

25      By engaging in a thorough investigation and evaluation of Plaintiff's claims, Plaintiff's Counsel

26  can opine that the Settlement, for the consideration and on the terms set forth in the Settlement

27  Agreement, is fair, reasonable, and adequate, and is in the best interests of Class Members in light of all

28  known facts and circumstances, including the risk of significant delay and uncertainty associated with

1   litigation, various defenses asserted by Defendant. (Perez Decl. ¶¶ 4-5.)

2           **F.**       **The Settlement Class Has Responded Positively to the Settlement**

3           The Settlement Class' response to date demonstrates its support for this settlement—not a single

4   Class Member has objected to the Settlement and only one Class Members opted out of the Settlement

5   Class. (Schwartz Decl. ¶¶ 15-16.)  The average settlement payment is approximately $3,110, and a

6   highest payment is approximately $3,970. (Schwartz Decl. ¶ 16.)  A low number of opt-outs and

7   objections is a strong indicator that a settlement is fair and reasonable. *7-Eleven Owners for Fair*

8   *Franchising v. Southland Corp.*, 85 Cal. App. 4th 1135, 1152-53 (2000) (class response favorable where

9   "[a] mere 80 of the 5,454 national class members elected to opt out  [(1.5% of the entire Class)] and . . .

10  [a] total of nine members . . . objected to the settlement); *Churchill Village, LLC v. General Electric*, 361

11  F.3d 566 (9th Cir. 2004) (affirming settlement approval where 45 of approximately 90,000 notified class

12  members objected and 500 opted out). The Settlement Class' response—both in the low rate of opt-outs

13  and the complete absence of objectors—compares favorably to those cases and warrants final approval.

14          Likewise, the average Class Member recovery of approximately $3,110 compares favorably to

15  other wage and hour class action settlements for similar claims on behalf of non-exempt employees. *See*,

16  *e.g.*, *See*, *e.g.*, *Jones v. Bath & Body Works, Inc.*, No. 2:13-cv-05206-FMO-AJW (C.D. Cal. July 11,

17  2016) (average net recovery of approximately $50); *Palencia v. 99 Cents Only Stores*, No. 34-2010-

18  00079619 (Sacramento County Super. Ct.) (average net recovery of approximately $80); *Doty v. Costco*

19  *Wholesale Corp.*, Case No. CV05-3241 FMC-JWJx (C.D. Cal. May 14, 2007) (average net recovery of

20  approximately $65); *Sorenson v. PetSmart, Inc.*, Case No. 2:06-CV-02674-JAM-DAD (E.D. Cal.)

21  (average net recovery of approximately $60); *Lim v. Victoria's Secret Stores, Inc.*, Case No. 04CC00213

22  (Orange County Super. Ct.) (average net recovery of approximately $35); and *Gomez v. Amadeus Salon,*

23  *Inc.*, Case No. BC392297 (L.A. Super. Ct.) (average net recovery of approximately $20).

24          **G.**       **The Requested Payment to the Settlement Administrator Is Reasonable and**

25                  **Should Receive Final Approval**

26          Plaintiff requests final approval of settlement administration costs in the amount of $10,000.

27  (Schwartz Decl. ¶ 17, Ex. B.)  Rust has promptly and properly distributed the Class Notice to all Class

28  Members and completed its duties in accordance with the settlement terms and the Court's preliminary

approval Order. (*See generally* Schwartz Decl.)  Accordingly, the $10,000 payment is fair and reasonable and should be accorded final approval along with the rest of the Settlement terms.

**IV.     CONCLUSION**

The Parties have negotiated a fair and reasonable settlement of a case that provides relief that likely would never have been realized but for this class action. Accordingly, final approval of the Settlement should be granted.

Dated:  May 9, 2019                                    Respectfully submitted,

Capstone Law APC

By:  /s/ Arnab Banerjee
Raul Perez
Arnab Banerjee
Brandon Brouillette

Plaintiff Jesse Black