UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JESSE BLACK,<br><br>   Plaintiff,<br><br>v.<br><br>T-MOBILE USA, INC,<br><br>   Defendant. | Case No. 17-cv-04151-HSG<br><br>**ORDER GRANTING FINAL APPROVAL OF CLASS ACTION SETTLEMENT AND GRANTING IN PART AND DENYING IN PART MOTION FOR ATTORNEYS' FEES**<br><br>Re: Dkt. Nos. 63, 64 |

Pending before the Court are Plaintiff's motions for final approval of class action settlement and for attorneys' fees, costs and expenses, and a class representative enhancement payment. Dkt. Nos. 63, 64. The Court held a final fairness hearing on June 13, 2019. Dkt. No. 67. For the reasons set forth below, the Court **GRANTS** final approval. The Court also **GRANTS IN PART AND DENIES IN PART** Plaintiff's motion for attorneys' fees, costs and expenses, and enhancement payment.

**I. BACKGROUND**

 **A. Factual Background**

Plaintiff Jesse Black filed this putative labor and employment class action in Alameda Superior Court on January 31, 2017. *See* Dkt. No. 1, Ex. A ("Compl."). Defendant T-Mobile USA, Inc. ("T-Mobile") removed the action to this Court in July 2017. Dkt. No. 1. In his Complaint, Plaintiff alleges that he worked for Defendant as a Senior Field Technician and was denied adequate overtime compensation as well as meal and rest periods from approximately 2008 through 2015. *See* Compl. ¶ 4. According to Plaintiff, Defendant had "a company-wide" policy of scheduling technicians for rotating "on-call" weeks in which they "had to be available 24/7 to respond to service calls" and "could not use that time freely for their own purpose." *Id.* ¶¶ 46, 56.

An on-call week would run from Monday at 5:00 p.m. through the following Monday at 7:59 a.m. *Id.* ¶ 46. Defendant paid technicians $22.47 per day during these on-call weeks, but "failed to pay Plaintiff and class members for the remainder of the time during which they were not free to use their time for their own purposes." *Id.* Plaintiff further alleges that Defendant did not have a policy permitting its employees to take a second 30-minute meal period on days they worked in excess of 10 hours. *Id.* ¶ 48.

On the basis of these facts, Plaintiff asserts nine causes of action under California law on behalf of himself and the putative class for: (1) unpaid overtime; (2) unpaid minimum wage; (3) failure to provide meal periods; (4) failure to provide rest periods; (5) failure to provide accurate wage statements and maintain payroll records; (6) failure to pay wages upon termination; (7) failure to provide reporting time pay; (8) unlawful business practices; and (9) unfair business practices. *See id.* ¶¶ 39–115.

The parties participated in mediation on August 21, 2018, and were able to agree on the principal terms of a settlement agreement. Dkt. No. 49. The parties filed their motion for preliminary approval of class action settlement on October 25, 2018, Dkt. No. 51, which the Court granted on February 8, 2019, Dkt. No. 56.

### B. Settlement Agreement

Following extensive formal discovery and with the assistance of a mediator, the parties eventually entered into a settlement agreement on October 10, 2018. Dkt. No. 51-1 ¶¶ 4–6, Ex. 1 ("SA"). The key terms are as follows:

<u>Class Definition</u>: The settlement includes all persons who have worked for Defendant as non-exempt, hourly-paid field technicians in California at any time from February 1, 2013 through the date of Preliminary Approval. SA ¶ 5.

<u>Settlement Benefits</u>: Defendant will pay a total settlement amount of $980,000, including settlement payments to all Class Members totaling an estimated $594,580 after excluding settlement administrative costs estimated at $10,000, any incentive awards, any attorneys' fees and costs award, and a payment of $18,750 to the Labor Workforce Development Agency pursuant to the Private Attorneys General Act of 2004 (PAGA). SA ¶¶ 8, 13, 25; Dkt. No. 64 at 4. Individual

1  settlement payments will be calculated proportionately based on the number of workweeks a Class
2  Member worked during the class period. SA ¶ 35. Individual settlement amounts will average
3  approximately $3,110. Dkt. No. 64 at 2; Dkt. No. 64-2 ¶ 16.

Release: All settlement Class Members will release:

> all claims, rights, demands, liabilities, and causes of action, arising from, or related to, the claims alleged or which could have been alleged in the proposed First Amended Complaint based on the same set of operative pleaded facts, including: (i) all claims for unpaid wages, including overtime; (ii) all claims for meal and rest break violations; (iii) all claims for unpaid minimum wages; (iv) all claims for the failure to timely pay wages upon termination; (v) all claims for the failure to timely pay wages during employment, including but not limited to any on call time alleges to be compensable but not paid; (vi) all claims for wage statement violations; (vii) all claims for failure to pay reporting time compensation or paid sick leave; and (viii) all claims asserted through California Business & Professions Code §§ 17200, et seq., and California Labor Code §§ 2698, et seq. based on the preceding claims.

SA ¶ 21.

Class Notice: A third-party settlement administrator will send class notices via U.S. mail to each member of the class, using a class list provided by Defendant. SA ¶ 39. The notice will include: the nature of the action, a summary of the settlement terms, and instructions on how to object to and opt out of the settlement, including relevant deadlines. *See* Dkt. No. 51-1, Ex. A (proposed notice).

Opt-Out Procedure: The parties propose that any putative Class Member who does not wish to participate in the settlement must sign and postmark a written request for exclusion to the settlement administrator no later than 30 days after the date notice is mailed. SA ¶¶ 24, 44.

Incentive Award: The Named Plaintiff will apply for an incentive award of no more than $10,000, subject to the approval of the Court. SA ¶¶ 7, 31.

Attorneys' Fees and Costs: Plaintiff will file an application for attorneys' fees not to exceed one-third of the settlement fund ($326,667), and costs not to exceed $20,000. SA ¶ 2.

//
//
//

## II. ANALYSIS

### A. Final Settlement Approval

#### i. Class Certification

Final approval of a class action settlement requires, as a threshold matter, an assessment of whether the class satisfies the requirements of Federal Rule of Civil Procedure 23(a) and (b). *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1019–1022 (9th Cir. 1998). Because no facts that would affect these requirements have changed since the Court preliminarily approved the class on February 8, 2019, this order incorporates by reference its prior analysis under Rules 23(a) and (b) as set forth in the order granting preliminary approval. *See* Dkt. No. 56 at 4–7.

#### ii. The Settlement

"The claims, issues, or defenses of a certified class may be settled . . . only with the court's approval." Fed. R. Civ. P. 23(e). The Court may finally approve a class settlement "only after a hearing and on finding that it is fair, reasonable, and adequate." Fed. R. Civ. P. 23(e)(2); *Officers for Justice v. Civil Serv. Comm'n of the City and County of San Francisco*, 688 F.2d 615, 625 (9th Cir. 1982) ("The district court's role in evaluating a proposed settlement must be tailored to fulfill the objectives outlined above. In other words, the court's intrusion upon what is otherwise a private consensual agreement negotiated between the parties to a lawsuit must be limited to the extent necessary to reach a reasoned judgment that the agreement is not the product of fraud or overreaching by, or collusion between, the negotiating parties . . . "). To assess whether a proposed settlement comports with Rule 23(e), the Court "may consider some or all" of the following factors: (1) the strength of plaintiff's case; (2) the risk, expense, complexity, and likely duration of further litigation; (3) the risk of maintaining class action status throughout the trial; (4) the amount offered in settlement; (5) the extent of discovery completed, and the stage of the proceedings; (6) the experience and views of counsel; (7) the presence of a governmental participant; and (8) the reaction of the class members to the proposed settlement. *Rodriguez v. West Publ'g Corp.*, 563 F.3d 948, 963 (9th Cir. 2009); *see also Hanlon*, 150 F.3d at 1026. "The relative degree of importance to be attached to any particular factor" is case specific. *Officers for Justice*, 688 F.2d at 625.

In addition, "[a]dequate notice is critical to court approval of a class settlement under Rule 23(e)." *Hanlon*, 150 F.3d at 1025. As discussed below, the Court finds that the proposed settlement is fair, adequate, and reasonable, and that Class Members received adequate notice.

### a. Adequacy of Notice

Under Federal Rule of Civil Procedure 23(e), the Court "must direct notice in a reasonable manner to all class members who would be bound by the proposal." Fed. R. Civ. P. 23(e)(1). Rule 23(c)(2)(B) requires "the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." The notice must "clearly and concisely state in plain, easily understood language" the nature of the action, the class definition, and the class members' right to exclude themselves from the class. Fed. R. Civ. P. 23(c)(2)(B). Although Rule 23 requires that reasonable efforts be made to reach all class members, it does not require that each class member actually receive notice. *See Silber v. Mabon*, 18 F.3d 1449, 1454 (9th Cir. 1994) (noting that the standard for class notice is "best practicable" notice, not "actually received" notice).

The Court finds that the notice and notice plan previously approved by the Court was implemented and complies with Rule 23(c)(2)(B). *See* Dkt. No. 56 at 3, 10–11. The Court ordered the third-party settlement administrator, Rust Consulting, Inc. ("Rust"), to send class notice via U.S. mail based on a class list Defendant provided. *Id.* at 3. Rust represents that class notice was provided as directed. Dkt. No. 64-2 ¶¶ 3–11. Rust verified the mailing addresses from the class list with the National Change of Address Database. *Id.* ¶ 9. A total of 191 notice packets were sent out, and 2 packets were initially returned as undeliverable as of April 25, 2019. *Id.* ¶¶ 10–11. For those 2 returned notice packets, Rust performed an address trace to find more current addresses and re-mailed the notice packets. *Id.* ¶ 11. As of May 9, 2019, no notice packets were returned as undeliverable. *Id.* ¶ 12.

In light of these facts, the Court finds that the parties have sufficiently provided the best practicable notice to the Class Members.

//

//

### b. Fairness, Adequacy, and Reasonableness

Having found the notice procedures adequate under Rule 23(e), the Court next considers whether the entire settlement comports with Rule 23(e).

#### 1. Strength of Plaintiff's Case and Litigation Risk

Approval of a class settlement is appropriate when plaintiffs must overcome significant barriers to make their case. *Chun-Hoon v. McKee Foods Corp.*, 716 F. Supp. 2d 848, 851 (N.D. Cal. 2010). Courts "may presume that through negotiation, the Parties, counsel, and mediator arrived at a reasonable range of settlement by considering Plaintiff's likelihood of recovery." *Garner v. State Farm Mut. Auto. Ins. Co.*, No. 08-cv-1365-CW, 2010 WL 1687832, at *9 (N.D. Cal. Apr. 22, 2010). Additionally, difficulties and risks in litigating weigh in favor of approving a class settlement. *Rodriguez*, 563 F.3d at 966. "Generally, unless the settlement is clearly inadequate, its acceptance and approval are preferable to lengthy and expensive litigation with uncertain results." *Ching v. Siemens Indus., Inc.*, No. 11-cv-04838-MEJ, 2014 WL 2926210, at *4 (N.D. Cal. June 27, 2014) (quotations omitted).

The Court finds that the amount offered in settlement is reasonable in light of the complexity of this litigation and the substantial risk Plaintiff would face in litigating the case given the nature of the asserted claims. *See* Dkt. No. 64 at 9–18. Several of Plaintiff's claims were vulnerable to summary judgment and Defendant would argue against class certification. *Id.* In reaching a settlement, Plaintiff has ensured a favorable recovery for the class. *See Rodriguez*, 563 F.3d at 966 (finding litigation risks weigh in favor of approving class settlement). Accordingly, these factors weigh in favor of approving the settlement. *See Ching*, 2014 WL 2926210, at *4 (favoring settlement to protracted litigation).

#### 2. Risk of Maintaining Class Action Status

In considering this factor, the Court looks to the risk of maintaining class certification if the litigation were to proceed. Certifying a class encompassing approximately 191 exempt, hourly-paid field technicians presents complex issues, especially in the context of labor laws, that could undermine certification. *See* Dkt. No. 64 at 9–18. Accordingly, this factor also weighs in favor of settlement.

6

### 3. Settlement Amount

The amount offered in the settlement is another factor that weighs in favor of approval. Based on the facts in the record and the parties' arguments at the final fairness hearing, the Court finds that the $980,000 settlement amount, which represents 50% of Defendant's estimated maximum potential exposure, falls well "within the range of reasonableness" in light of the risks and costs of litigation. *See* Dkt. No. 64 at 15; *see, e.g.*, *Villanueva v. Morpho Detection, Inc.*, No. 13-cv-05390-HSG, 2016 WL 1070523 *4 (N.D. Cal. March 18, 2016) (citing cases). The parties estimated that the recovery of each individual Class Member will be approximately $3,110. Dkt. No. 64 at 2; Dkt. No. 64-2 ¶ 16. This factor therefore weighs in favor of approval.

### 4. Extent of Discovery Completed and Stage of Proceedings

The Court finds that Class Counsel had sufficient information to make an informed decision about the merits of the case. *See In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d 454, 459 (9th Cir. 2000). The parties settled only after Plaintiff conducted extensive discovery, including reviewing over a thousand pages of documents, performing a thorough investigation into Defendant's policies and practices, and engaging an expert to analyze time and payroll records. Dkt. No. 64-1 ¶ 5. Both sides fully briefed and argued Plaintiff's motion to remand. Dkt. Nos. 15, 19, 20. The Court finds that the parties received, examined, and analyzed information, documents, and materials sufficient to allow them to assess the likelihood of success on the merits. This factor weighs in favor of approval.

### 5. Experience and Views of Counsel

The Court next considers the experience and views of counsel. "[P]arties represented by competent counsel are better positioned than courts to produce a settlement that fairly reflects each party's expected outcome in litigation." *Rodriguez*, 563 F.3d at 967 (quotations omitted). Accordingly, "[t]he recommendations of plaintiffs' counsel should be given a presumption of reasonableness." *In re Omnivision Techs., Inc.*, 559 F. Supp. 2d 1036, 1043 (N.D. Cal. 2008). Class Counsel has substantial experience in labor and wage class actions. Dkt. No. 64-1 ¶¶ 8–9. The Court recognizes, however, that courts have diverged on the weight to assign counsel's opinions. *Compare Carter v. Anderson Merch.*, LP, 2010 WL 1946784, at *8 (C.D. Cal. May 11,

2010) ("Counsel's opinion is accorded considerable weight."), *with Chun-Hoon*, 716 F. Supp. 2d at 852 ("[T]his court is reluctant to put much stock in counsel's pronouncements. . . ."). This factor's impact is therefore modest, but favors approval.

### 6. Reaction of Class Members

The reaction of the Class Members supports final approval. "[T]he absence of a large number of objections to a proposed class action settlement raises a strong presumption that the terms of a proposed class settlement action are favorable to the class members." *Nat'l Rural Telecomms. Coop. v. DIRECTV, Inc.*, 221 F.R.D. 523, 528–29 (C.D. Cal. 2004); *In re Linkedin User Privacy Litig.*, 309 F.R.D. 573, 589 (N.D. Cal. 2015) ("A low number of opt-outs and objections in comparison to class size is typically a factor that supports settlement approval.").

Class notice, which was served in accordance with the method approved by the Court, advised the Class of the requirements to object or opt out of the settlement. The deadline to submit a claim was on April 25, 2019. Dkt. No. 64-2 ¶ 10. Rust received no objections and only one request for exclusion. *See* Dkt. No. 64-1 ¶¶ 15–16. The Court finds that the lack of objections and minimal number of opt-outs in comparison to the size of the class indicate overwhelming support among the Class Members and weigh in favor of approval. *See*, *e.g.*, *Churchill Village LLC v. Gen. Elec.*, 361 F.3d 566, 577 (9th Cir. 2004) (affirming settlement where 45 of approximately 90,000 class members objected); *Rodriguez v. West Publ. Corp.*, Case No. CV05–3222 R, 2007 WL 2827379, at *10 (C.D. Cal. Sept. 10, 2007) (finding favorable class reaction where 54 of 376,301 class members objected).

\* \* \*

After considering and weighing the above factors, the Court finds that the settlement agreement is fair, adequate, and reasonable, and that the settlement Class Members received adequate notice. Accordingly, Plaintiff's motion for final approval of the class action settlement is **GRANTED**.

//

//

//

8

**B. Attorneys' Fees, Costs and Expenses, and Class Representative Enhancement Payment**

In its unopposed motion, Class Counsel asks the Court to approve an award of $326,667 in attorneys' fees and $20,000 in costs. Dkt. No. 63 at 1, 19. Class Counsel also seeks a $10,000 incentive award for the Named Plaintiff. Dkt. No. 63 at 20.

**i. Attorneys' Fees**

**a. Legal Standard**

"In a certified class action, the court may award reasonable attorney's fees and nontaxable costs that are authorized by law or by the parties' agreement." Fed. R. Civ. P. 23(h). In a state law claim—like this one—state law also governs the calculation of attorneys' fees. *See Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1047 (9th Cir. 2002). Nevertheless, the Court may still look to federal authority for guidance in awarding attorneys' fees. *See Apple Computer, Inc. v. Superior Court*, 126 Cal. App. 4th 1253, 1264 n.4 (2005) ("California courts may look to federal authority for guidance on matters involving class action procedures.").

Under California law, the "percentage of fund method" is proper in class actions. *Laffitte v. Robert Half Int'l Inc.*, 1 Cal. 5th 480, 506 (2016). In addition, "trial courts have discretion to conduct a lodestar cross-check on a percentage fee." *Id.* The "lodestar figure is calculated by multiplying the number of hours the prevailing party reasonably expended on the litigation (as supported by adequate documentation) by a reasonable hourly rate for the region and for the experience of the lawyer." *In re Bluetooth*, 654 F.3d at 941 (citing *Staton v. Boeing Co.*, 327 F.3d 938, 965 (9th Cir. 2003). Trial courts "also retain the discretion to forgo a lodestar cross-check and use other means to evaluate the reasonableness of a requested percentage fee." *Laffitte*, 1 Cal. 5th at 506.

**b. Discussion**

Class Counsel here seeks $326,667 in fees, or 33% of the settlement amount. *See* Dkt. No. 63 at 1. Using federal law for guidance, 25% of the common fund is the benchmark for attorney fee awards. *See*, *e.g.*, *In re Bluetooth*, 654 F.3d at 942 ("[C]ourts typically calculate 25% of the fund as the 'benchmark' for a reasonable fee award, providing adequate explanation in the record of any 'special circumstances' justifying a departure."). Class Counsel seeks an award that well

9

exceeds the benchmark for a reasonable fee award under the percentage-of-recovery method and is higher than the "usual range" of 20–30%. *See Vizcaino*, 290 F.3d at 1047. The Court considers the reasonableness of the percentage requested in light of the factors endorsed by the Ninth Circuit, with the 25% award as a starting point. The Ninth Circuit has identified several factors a court should consider to determine whether to adjust a fee award from the benchmark: (1) the results achieved; (2) the risk of litigation; (3) the skill required and the quality of work; (4) the contingent nature of the fee and the financial burden carried by the plaintiff; and (5) awards made in similar cases. *See Vizcaino*, 290 F.3d at 1048–50.

The Court recognizes that Class Counsel obtained significant results for the class. The settlement amount represents approximately 50% of Defendant's estimated maximum exposure. Moreover, no Class Member objected to the settlement and only one member requested exclusion, suggesting strong support for the settlement's outcome. Further, Class Counsel assumed substantial risk in litigating this action on a contingency fee basis, and incurring costs, with "no guarantee that they would receive any remuneration for the many hours [ ] they spent litigating." Dkt. No. 63 at 11. Class Counsel also was, to an extent, precluded from taking and devoting resources to other cases or potential cases. With respect to the quality of litigation, Class Counsel is experienced in litigating large class actions concerning employment matters and wage and hour cases. The successful result involved significant commitment of effort and skill. In particular, the attorneys spent many hours determining the alleged exposure and calculating potential settlement payments for the Class Members' benefit.

To further justify this upward departure, Class Counsel contends that its lodestar supports the reasonableness of its request. In calculating its lodestar, Class Counsel states it expended a combined total of 660 hours. Dkt. No. 63 at 16; Dkt. No. 63-1 ¶ 6. With respect to hourly rates, the rates requested are between $295 to $435 for associates and $495 to $725 for senior counsel and partners. Dkt. No. 63-1 ¶ 6. The Court finds that the billing rates used by Class Counsel to calculate the lodestar are reasonable and in line with prevailing rates in this district for personnel of comparable experience, skill, and reputation. *See, e.g.*, *Hefler v. Wells Fargo & Co.*, No. 16-CV-05479-JST, 2018 WL 6619983, at \*14 (N.D. Cal. Dec. 18, 2018) (rates from $650 to $1,250

for partners or senior counsel, $400 to $650 for associates); *In re Volkswagen "Clean Diesel" Mktg., Sales Practices, & Prod. Liab. Litig.*, No. 2672 CRB (JSC), 2017 WL 1047834, at *5 (N.D. Cal. Mar. 17, 2017) (billing rates ranging from $275 to $1600 for partners, $150 to $790 for associates, and $80 to $490 for paralegals reasonable "given the complexities of this case and the extraordinary result achieved for the Class."). According to Class Counsel, based on the number of hours billed and the hourly rates, this yields a lodestar of $292,354.50. Dkt. No. 63-6 ¶ 6; Dkt. No. 63 at 16. Class Counsel is seeking fees with a 1.2 lodestar multiplier. Dkt. No. 63 at 16.

The Court finds that these factors warrant an upward departure from the 25% benchmark. However, the percentage requested is higher than other awards granted by this Court in comparable wage and hour cases. *See, e.g.*, *Cuzick v. Zodiac U.S. Seat Shells, LLC*, No. 16-CV-03793-HSG, 2018 WL 2412137, at *7 (N.D. Cal. May 29, 2018) (finding 33% attorneys' fee award unjustified and awarding 30%); *Bower v. Cycle Gear, Inc*, No. 14-CV-02712-HSG, 2016 WL 4439875, at *7 (N.D. Cal. Aug. 23, 2016) (finding 30% attorneys' fee award reasonable). The Court finds that the facts of this case do not warrant the extraordinary award of one-third of the settlement fund to Class Counsel. That said, some upward departure is justified in recognition of the favorable settlement, the substantial risks of litigation, and the financial burden assumed. Accordingly, under the percentage-of-fund-method, the Court **GRANTS** attorneys' fees of 30% of the total settlement amount, or $294,000.

### ii. Attorneys' Costs

Class Counsel is entitled to recover "those out-of-pocket expenses that would normally be charged to a fee paying client." *Harris v. Marhoefer*, 24 F.3d 16, 19 (9th Cir. 1994) (quotations omitted). Class Counsel seeks reimbursement of $20,000 in out-of-pocket costs. *See* Dkt. No. 63 at 19. Class Counsel submitted a table summarizing the costs and expenses incurred. Dkt. No. 63-1 ¶ 9. These expenses include professional service fees (experts, investigators), travel fees, and discovery-related fees. *Id*. The Court is satisfied that these costs were reasonably incurred and **GRANTS** the motion for costs in the amount of $20,000.

### iii. Incentive Award

Class Counsel requests an incentive award of $10,000 for the Named Plaintiff. "[N]amed

plaintiffs . . . are eligible for reasonable incentive payments." *Staton*, 327 F.3d at 977; *Rodriguez*, 563 F.3d at 958 ("Incentive awards are fairly typical in class action cases."). They are designed to "compensate class representatives for work done on behalf of the class, to make up for financial or reputational risk undertaken in bringing the action, and, sometimes, to recognize their willingness to act as a private attorney general." *Rodriguez*, 563 F.3d at 958–59. Nevertheless, the Ninth Circuit has cautioned that "district courts must be vigilant in scrutinizing all incentive awards to determine whether they destroy the adequacy of the class representatives . . . ." *Radcliffe v. Experian Info. Solutions, Inc.*, 715 F.3d 1157, 1165 (9th Cir. 2013) (quotations omitted). This is particularly true where "the proposed service fees greatly exceed the payments to absent class members." *Id.* The district court must evaluate an incentive award using "relevant factors includ[ing] the actions the plaintiff has taken to protect the interests of the class, the degree to which the class has benefitted from those actions, . . . [and] the amount of time and effort the plaintiff expended in pursuing the litigation . . . ." *Id.* at 977.

In wage and hour cases, many courts in this district have held that a $5,000 incentive award is "presumptively reasonable." *See*, *e.g.*, *Harris v. Vector Marketing Corp.*, No. 08-cv-5198-EMC, 2012 WL 381202, at *7 (N.D. Cal. Feb. 6, 2012) (observing that "as a general matter, $5,000 is a reasonable amount"); *Smith v. Am. Greetings Corp.*, No. 14-CV-02577-JST, 2016 WL 362395, at *11 (N.D. Cal. Jan. 29, 2016) (awarding $5,000); *Odrick v. UnionBancal Corp.*, No. C 10-5565 SBA, 2012 WL 6019495, at *7 (N.D. Cal. Dec. 3, 2012) (same). Incentive awards may also be especially appropriate in wage and hour class actions, where a named plaintiff undertakes "a significant 'reputational risk' in bringing [an] action against [plaintiff's] former employer. *Covillo v. Specialtys Cafe*, No. C-11-00594 DMR, 2014 WL 954516, at *8 (N.D. Cal. Mar. 6, 2014) (citing *Rodriguez*, 563 F.3d at 958–59). In determining the reasonableness of a requested incentive award, some courts have considered, among other factors, the proportionality between the incentive award requested and the average class member's recovery. *See Austin v. Foodliner, Inc.*, No. 16-CV-07185-HSG, 2019 WL 2077851, at *8 (N.D. Cal. May 10, 2019); *Smith*, 2016 WL 362395, at *10.

Plaintiff requests a $10,000 service award, at the high end of the range of awards granted

by this Court in comparable class actions. *See Austin*, 2019 WL 2077851, at *8; *McDonald v. CP OpCo, LLC*, No. 17-CV-04915-HSG, 2019 WL 2088421, at *8 (N.D. Cal. May 13, 2019). Considering all the circumstances of this case, the Court finds that a $10,000 service award is reasonable to compensate Plaintiff. As to the proportionality between the requested award and average recovery, the Court finds that a ratio of approximately 3.2 times the amount of the sizeable average recovery of $3,110 is reasonable. Plaintiff spent approximately 90 to 100 hours on this case, actively monitoring the litigation, communicating frequently with counsel, working with counsel to prepare and respond to discovery requests (including interrogatories and document requests), preparing for and sitting for his deposition, and participating in the settlement process. Dkt. No. 63-2 ¶¶ 4–8. Class Counsel confirms that Plaintiff's effort and commitment contributed to the favorable settlement amount, which represented 50% of Defendant's estimated maximum potential exposure. Dkt. No. 63 at 21; *see* Dkt. No. 64 at 15. The Court finds that the incentive award of $10,000 is appropriate to compensate Plaintiff for his time and effort invested and the risk he took to enable a highly favorable result for his fellow Class Members. The Court therefore **GRANTS** the request for an incentive award in the amount of $10,000.

### III.   CONCLUSION

For the foregoing reasons it is hereby ordered that:

1. Plaintiff's Motion for Final Approval of Class Action Settlement is hereby **GRANTED**.

2. Plaintiff's Motion for Class Counsel's Attorneys' Fees, Costs and Expenses, and Class Representative Enhancement Payment is hereby **GRANTED IN PART AND DENIED IN PART.**

3. The Court approves the settlement amount of $980,000, including payment in the amount of $18,750 to the Labor Workforce Development Agency under the PAGA; settlement administrator costs in the amount of $10,000; attorneys' fees in the amount of $294,000; costs in the amount of $20,000; and an incentive fee for the Named Plaintiff in the amount of $10,000.

The parties and settlement administrator are directed to implement this Final Order and the settlement agreement in accordance with the terms of the settlement agreement. The parties are

further directed to file a stipulated final judgment within 21 days from the date of this order.

**IT IS SO ORDERED.**

Dated: 7/24/2019

HAYWOOD S. GILLIAM, JR.
United States District Judge